[No. 49945-4. En Banc. August 9, 1984.]

JoANN LYNN DiNINO, ET AL, *Respondents,* v. THE
STATE OF WASHINGTON, *on the Relation of
Slade Gorton, Appellant.*

*Kenneth O. Eikenberry, Attorney General,* and *Maureen
Hart, Assistant,* for appellant.

*Ester Greenfield* on behalf of the American Civil Liberties Union and Northwest Women's Law Center, for respondents.

BRACHTENBACH, J.—In 1979, the Legislature enacted the Natural Death Act, RCW 70.122.010 *et seq.* (hereinafter cited as NDA). The NDA recognized that adult individuals have a fundamental right to make decisions concerning medical care, including the decision to forgo life–sustaining treatment if terminally ill. RCW 70.122.010. Accordingly, the act created a procedure whereby individuals could execute a directive which provides for the withholding or withdrawal of life–sustaining procedures when the individual is in a terminal condition. RCW 70.122.020.

The act defines "directive" as: "a written document voluntarily executed by the declarer in accordance with the requirements of RCW 70.122.030." RCW 70.122.030(1) lists the procedural requirements for executing a directive and also includes a model directive. The subsection states in relevant part:

> The directive shall be essentially in the following form, but in addition may include other specific directions:
>
> . . .
>
> (b) In the absence of my ability to give directions regarding the use of such life–sustaining procedures, it is my intention that this directive shall be honored by my family and physician(s) as the final expression of my legal right to refuse medical or surgical treatment and I accept the consequences from such refusal.
>
> (c) If I have been diagnosed as pregnant and that diagnosis is known to my physician, this directive shall have no force or effect during the course of my pregnancy.

(*See* RCW 70.122.030(1) for the model directive in its entirety.)

The present appeal is premised upon this language. The stipulated facts are as follows. In 1979 the respondent/cross appellant JoAnn Lynn DiNino executed a directive under the NDA. She is a woman of childbearing age, *is not pregnant* and *is not diagnosed as being in a terminal condition.* Her directive, although properly executed procedurally, altered the provisions contained in the model directive. She inserted the following language.

(b) In the absence of my ability to give directions regarding the use of life sustaining procedures, it is my intention that this directive shall be honored by my family and physicians as the final expression of my legal right to refuse medical or surgical treatment, and of *my legal right to consent to termination of any pregnancy existing at such time,* and I accept the consequences of that refusal and that consent.

(c) If I have been diagnosed as pregnant and that diagnosis is known to my physician, *this directive shall still have full force and effect during the course of my pregnancy.* In the absence of my ability to give directions to my physician regarding any such pregnancy, I direct that *this document be considered a final expression of my desire to have that pregnancy terminated by the least painful and difficult means available, if such termination is necessary to give the remainder of this directive full force and effect.*

(Italics ours.) Her directive deviates from the model directive by (1) directing that life–sustaining procedures be withheld regardless of pregnancy and (2) directing that first her pregnancy be terminated and then life sustaining procedures are to be withheld or withdrawn.

Ms. DiNino then approached her personal physician, Dr. August Piper, co–respondent and co–cross appellant, requesting that he include the directive in her medical file. Dr. Piper refused, stating he would be unwilling to follow the terms of the directive due to fear of potential liability for not acting in accord with the NDA. Neither Ms. DiNino nor Dr. Piper made any effort to find out if any other physician would either follow her directive or place it in her medical file.

Thereupon, Ms. DiNino and Dr. Piper brought suit against the State under the Uniform Declaratory Judgments Act, RCW 7.24.020, seeking a declaration that her directive was valid and enforceable and that no physician would be civilly or criminally liable for following it. In the alternative, they sought a declaration that RCW 70.122-.030(1)(c) was unconstitutional and void. The State

answered arguing that the respondent's directive was invalid as written and that the subsection was constitutional. Both parties then moved for summary judgment.

The trial court granted partial summary judgment. It held that the NDA pregnancy provision, RCW 70.122-.030(1)(c), was unconstitutional because, as drafted, the subsection inhibited a woman's right to exercise control over her reproductive decisions and, therefore, violated DiNino's fundamental right of privacy. The trial court, however, denied DiNino's motion for a declaration of validity concerning her directive because her directive attempted to exercise full control over her reproductive decisions beyond the point where the State has a legitimate interest in such decisions.

The State appeals the finding of unconstitutionality. DiNino and Piper appeal the declaration of invalidity. We reverse the trial court on both issues.

The respondents brought suit under the Uniform Declaratory Judgments Act, RCW 7.24.020. The act is designed to settle and afford relief from insecurity and uncertainty with respect to rights, status and other legal relations and is to be liberally construed and administered. RCW 7.24.120; *Clallam Cy. Deputy Sheriff's Guild v. Board of Clallam Cy. Comm'rs*, 92 Wn.2d 844, 848, 601 P.2d 943 (1979). The respondents argue that this "controversy" falls under the act because DiNino and Piper need to know their rights and liabilities under both the NDA and her directive.

██ Absent issues of major public importance, however, a "justiciable controversy" must exist before a court's jurisdiction may be invoked under the act. *Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 815, 514 P.2d 137 (1973).

> A "justiciable controversy" is
> (1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing

interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.

*Clallam Cy. Deputy Sheriff's Guild,* at 848.

All four elements must coalesce; otherwise the court steps into the prohibited area of advisory opinions. *Diversified Indus.,* at 815. This case does not satisfy all four elements and, therefore, must be dismissed for failure to present a justiciable controversy.

The respondents argue that the pregnancy provision of the NDA infringes respondent DiNino's constitutional right of privacy in two respects. First, it directly inhibits her right to choose to have an abortion and second, directly infringes her right to choose to forgo medical treatment. We find that neither assertion is ripe for review. Respondent is neither pregnant nor suffering from a terminal condition. As such, respondents' claims present a purely hypothetical and speculative controversy. Under these facts an opinion from this court would be nothing more than an advisory opinion.

This conclusion is reinforced by the position taken by the State. In both its brief and at oral argument, the State conceded that an individual can draft a directive that contains a properly worded abortion provision, or in the alternative, simply delete the pregnancy provision of the model directive. Thus, in the abstract, the NDA itself does not directly infringe any constitutional rights as claimed by the respondents. We express no opinion as to the validity of DiNino's directive as drafted, for this must await a factual controversy. However, under the facts presented, the respondents, as well as this court, can only speculate as to the possible impact of the NDA on an individual who is pregnant and is in a terminal condition.

Moreover, we find that the State's concession eliminates it as a party having an opposing interest. The State did not try to prevent DiNino from executing her directive or attempt to impose any sanctions against Dr. Piper. The

State simply responded to an attack on the constitutionality of its legislation and only argued that DiNino's directive was too broadly written. It otherwise has no interest in opposing the validity of DiNino's directive.

Respondent DiNino argues that there is a present controversy between parties with opposing interests because she has a present right to execute a directive and have it placed in her medical file which, she continues, the NDA model directive prevents. Assuming arguendo that she has such a right, the State is not preventing her from placing it in her medical files; the co–respondent, Dr. Piper, her own physician, refuses to place it there. DiNino has made no effort to find out if any other physician would place it in her file, nor has Dr. Piper made a good faith effort to locate a physician who would comply with her directive. *See* RCW 70.122.060(2). Thus, in this respect, if any controversy exists, it is between the co–respondents.

This case does not present a justiciable controversy. We also refuse to exercise our discretion and render a declaratory judgment as to the constitutionality of the NDA. While the constitutional rights allegedly infringed are important rights, this, in and of itself, does not qualify the case as one presenting "issues of broad overriding public import." *Diversified Indus.*, at 814. *See also State ex rel. Distilled Spirits Inst., Inc. v. Kinnear*, 80 Wn.2d 175, 178, 492 P.2d 1012 (1972). This case presents a hypothetical, speculative controversy. The record does not show that women are prevented from executing directives, that physicians refuse to comply with directives that are not modeled after the statutory directive, or that the NDA, in the abstract, *directly* prevents a woman from obtaining an abortion or choosing to forgo medical treatments. Therefore, without a factual controversy before us we believe that an advisory opinion would not be beneficial to the public or to other branches of government. *Cf. Clallam Cy. Deputy Sheriff's Guild v. Board of Clallam Cy. Comm'rs*, 92 Wn.2d 844, 848–49, 601 P.2d 943 (1979); *State ex rel. Distilled Spirits Inst., Inc.*

Accordingly, we reverse the trial court's bifurcated order because this case does not present a justiciable controversy.

ROSELLINI, UTTER, DORE, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

DIMMICK, J. (dissenting)—I disagree that this case does not present a justiciable controversy. If there is no justiciability at the time a woman drafts a directive under the Natural Death Act (NDA), there never will be.

By the majority's reasoning, a woman must be pregnant and terminally ill before the issue is ripe for determination. Whatever the impact of the NDA in that circumstance, the woman whose directive will then be "justiciable" will never benefit from a ruling on the matter. In fact, the case would run a very real danger of being declared moot before a judicial decision could be made. And if, in its discretion, the court chooses to address the issues on mooted facts, would that determination be based on any less speculation than a determination under the circumstances now before us?

Respondent DiNino has a present, existing interest with respect to her right to draft a valid directive under the NDA. The State's concession that a properly worded pregnancy clause would not conflict with the NDA does not alter its position that DiNino's directive is invalid as written. Without judicially determining the directive's validity, DiNino's substantial rights under the NDA and the proper interpretation of the statute will remain clouded. I see no impediment to satisfying the justiciability requirements. *See Clallam Cy. Deputy Sheriff's Guild v. Board of Clallam Cy. Comm'rs,* 92 Wn.2d 844, 601 P.2d 943 (1979).

Further, the majority underrates the public importance of this issue. A major purpose of the NDA is to protect physicians from civil and criminal liability in the event that life–sustaining treatment is withheld at the patient's request. *See* RCW 70.122.050. Failure to resolve the validity of a directive with a pregnancy clause that varies from the statute's model directive once again puts all physicians

at risk if the nonconforming directive is followed. And, leaving the issue unresolved impacts the rights of all of this state's women of childbearing age who intend to draft a directive and desire to exercise the right to choose an abortion while terminally ill. Surely this is a matter of "continuing and substantial public interest" that warrants an authoritative determination for future guidance. *In re Cross,* 99 Wn.2d 373, 662 P.2d 828 (1983); *Sorenson v. Bellingham,* 80 Wn.2d 547, 496 P.2d 512 (1972).

Concluding that the issue before us is presently reviewable and that the failure to render a decision obscures rights and obligations of significant public concern, I respectfully dissent.

WILLIAMS, C.J., and DOLLIVER, J., concur with DIMMICK, J.