Joanne Irene GABRYNOWICZ, on behalf of herself and all similarly situated women in North Dakota, and John Graham, Plaintiffs,

v.

Heidi HEITKAMP, in her official capacity as Attorney General of the State of North Dakota, Defendant.

Civ. No. A2–95–76.

United States District Court,
D. North Dakota,
Northeastern Division.

Nov. 14, 1995.

**1062**

Simon Heller, Center for Reproductive Law and Policy, New York City, for Plaintiffs.

Sara B. Gullickson, Assistant Attorney General, Fargo, ND, for Defendant.

## MEMORANDUM AND ORDER

WEBB, Chief Judge.

Plaintiffs challenge the constitutionality of provisions regarding pregnancy and abortion in North Dakota's "Uniform Rights of the Terminally Ill Act" (URTIA) and "Durable Power of Attorney for Health Care Act" (DPAHCA). Before the court is the defendant's motion to dismiss (docket #4).

### Background

URTIA deals with the execution and enforcement of so-called "living wills." The act recognizes that "[e]very competent adult has the right and the responsibility to control the decisions relating to the adult's own medical care, including the decision to have medical or surgical means or procedures calculated to prolong the adult's life provided, withheld, or withdrawn." N.D.Cent.Code § 23–06.4–01. An adult may execute a "declaration" to govern these matters, which must be "substantially" in the form set out in the statute. § 23–06.4–03(3).[1] A declaration executed under the statute does not obligate a physician to do anything, but it is "presumptive evidence of the declarant's desires ... and must be given great weight by the physician in determining the intent of the incompetent declarant." § 23–06.4–04.[2] The statutory form for the declaration includes the following statement: "If I have been diagnosed as *pregnant and that diagnosis is known to my physician, this declaration is not effective during the course of my pregnancy.*" § 23–06.4–03(3)(e). Further, the statute directs,

> Notwithstanding a declaration executed under this chapter, medical treatment must be provided to a pregnant patient with a terminal condition unless ... such medical treatment will not maintain the patient in such a way as to permit the continuing development and live birth of the unborn child or will be physically harmful or unreasonably painful to the patient or will prolong severe pain that cannot be alleviated by medication.

§ 23–06.4–07(3).[3]

The purpose of DPAHCA "is to enable adults to retain control over their own medical care during periods of incapacity through prior designation of an individual to make health care decisions on their behalf." N.D.Cent.Code § 23–06.5–01. It provides that "[n]othing in this chapter permits an agent to consent to ... abortion ... unless

---

**1.** The statute provides that "a declaration may include additional specific directives," and "[t]he invalidity of any additional specific directives does not affect the validity of the declaration." § 23–06.4–03(3). It is unclear how a specific directive would be found "invalid" or what would happen if a specific directive contradicted a provision in the statutory form.

**2.** The "declaration becomes operative when it is communicated to the attending physician, and the declarant is determined by the attending physician and another physician to be in a terminal condition and no longer able to make decisions regarding administration of life-prolonging treatment." § 23–06.4–04.

**3.** In its provisions regarding pregnancy, North Dakota's statute diverges from the model act on which it is based. The model act does not mention pregnancy in its sample declaration, and in section 23–06.4–07, the North Dakota statute substitutes the words "Notwithstanding a declaration executed under this chapter" for the words "Unless the declarant otherwise provides" of the model act. *See* Letter from Attorney General Heidi Heitkamp to Representative Jennifer Ring (Nov. 14, 1994) at 2–3, citing Uniform Rights of the Terminally Ill Act, 9B U.L.A. 611 (1985).

the procedure is first approved by court order." § 23–06.5–03(5).

The plaintiffs in this case are a husband and wife.[4] Plaintiff Gabrynowicz seeks to execute a living will and durable power of attorney which will have the same effect whether or not she is pregnant. Plaintiff Graham seeks to be able to serve as Gabrynowicz's agent under DPAHCA and consent to an abortion without court approval. They claim that the pregnancy and abortion provisions in URTIA and DPAHCA are unconstitutional in that they: 1) impose undue burdens on the right to terminate pregnancy and make medical decisions under the First, Fourth, Ninth, and Fourteenth Amendments; 2) deprive women of liberty (bodily integrity) without due process, violating the Fourteenth Amendment; 3) discriminate on the basis of gender, violating the equal protection guarantee of the Fourteenth Amendment; 4) require an expression of adherence to the state's policy of protecting fetal life, violating the right to make and decline to make an expression of belief under the First and Fourteenth Amendments; and 5) violate the right to free exercise of religion under the First and Fourteenth Amendments. Plaintiffs seek declaratory and injunctive relief.

The defendant seeks dismissal for lack of ripeness, lack of standing, and failure to state a claim on which relief can be granted.

### Analysis

■ In addressing a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Only when the complaint on its face "reveals some insuperable bar to relief" should a dismissal be ordered. *United States v. Aceto Agric. Chems. Corp.*, 872 F.2d 1373, 1376 (8th Cir.1989). In this case, nonjusticiability raises that insuperable bar to relief.

■ Article III of the United States Constitution provides for federal court jurisdiction over "cases" and "controversies." Mere "abstract questions" are not justiciable. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 297, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979). Plaintiffs must have standing to bring the action and the matter must be ripe for adjudication. In this context, standing and ripeness overlap. Concrete injury is a central requirement of both concepts. *See, e.g., Babbitt*, 442 U.S. at 297–98, 99 S.Ct. at 2308–09 (discussing the "case or controversy" injury requirement without distinguishing standing from ripeness); *Duke Power Co. v. Carolina Envtl. Study Group*, 438 U.S. 59, 72, 81, 98 S.Ct. 2620, 2629, 2634, 57 L.Ed.2d 595 (1978) (discussing both standing and ripeness but requiring injury for both); *Bob's Home Service, Inc. v. Warren County*, 755 F.2d 625, 627 (8th Cir.1985) (applying a two-part test for ripeness which incorporates the requirements for standing—injury, causation, and redressability). In the specific context of challenging a statute, plaintiffs must show a "realistic danger of sustaining a direct injury as a result of the statute's operation." *Babbitt*, 442 U.S. at 298, 99 S.Ct. at 2308.

■ Here, it is not at all clear that plaintiffs will sustain a direct injury as a result of URTIA's or DPAHCA's operation. Gabrynowicz is neither pregnant nor incompetent. She does not wish to become pregnant, and is presently in good health. If the plaintiff were either pregnant or diagnosed with a terminal condition, the question would be much closer. As it is, there is no "realistic danger" that the statutes will directly injure the plaintiffs in the ways they assert. Neither standing nor ripeness is satisfied.

In what is apparently the only case on point, the Washington Supreme Court found that a healthy, non-pregnant woman's constitutional challenge to a similar living will statute was not ripe. *Dinino v. State*, 102 Wash.2d 327, 684 P.2d 1297, 1300 (1984). The Washington living will statute contained

---

4. Plaintiff Gabrynowicz purports to sue on behalf of herself and all similarly situated women in North Dakota, but she has not sought or received class certification. In addition, several of plaintiffs' allegations concern the rights or liabilities of physicians under the statutes, but no physician is named as a plaintiff. The court will limit its discussion to the named plaintiffs.

a sample declaration with a pregnancy clause almost identical to North Dakota's. *Dinino*, 684 P.2d at 1298. Ms. Dinino deleted that clause and inserted language indicating that she would want a pregnancy terminated and life-sustaining measures withheld or withdrawn regardless of pregnancy. *Id.*, 684 P.2d at 1298–99. Dinino asked her physician to place the living will in her files; he refused, fearing liability, and joined her as a plaintiff. *Id.*, 684 P.2d at 1299. Although Dinino was arguably farther along on the path to ripeness than Gabrynowicz, who has not yet executed a living will, the *Dinino* court found that the plaintiffs' claims "present[ed] a purely hypothetical and speculative controversy" and that "an opinion from [the] court would be nothing more than an advisory opinion." *Id.* This court agrees with that reasoning.

■ In addition to the constitutional limits on justiciability, the court must weigh "prudential considerations" in its evaluation of ripeness. The court should ask whether a prompt resolution is necessary, justifying the present exercise of judicial power, or whether a claim will be presented in a better light after subsequent events have developed. *Duke Power*, 438 U.S. at 81–82, 98 S.Ct. at 2634–35; *Bob's Home Service*, 755 F.2d at 627–28. Here, there is no actual dispute requiring prompt resolution, and without the development of subsequent events, this court "can only speculate as to the possible impact of the [statutes] on an individual who is pregnant and is in a terminal condition." *Dinino*, 684 P.2d at 1300.

The court acknowledges that the challenged statutes raise constitutional questions. For instance, the state has indicated that a declaration without the pregnancy clause would not be "substantially" in the statutory form, and thus not entitled to presumptive evidence of the patient's intent. (Def.'s Br. Supp.Dism. at 11–12, citing Letter from Attorney General Heidi Heitkamp to Representative Jennifer Ring (Nov. 14, 1994) at 2–3.) It is unclear what would happen if a "specific directive" was included which directly contradicted the required pregnancy clause. The state suggests that this would still be the best evidence of the patient's intent. (Def.'s

Br.Supp.Dism. at 14, citing Letter from Attorney General Heidi Heitkamp to Representative Jennifer Ring (Nov. 14, 1994) at 4.) But a contradictory provision might be found "invalid" under the statute, N.D.Cent.Code § 23–06.4–03(3), and in any event, a living will with two directly contradictory statements would seem to be of little value as evidence of a patient's intent. Even more troubling is section 23–06.4–07, which appears to mandate medical treatment of a pregnant patient without distinguishing on the basis of fetal viability (although it is unclear if the provision would apply only to patients with living wills executed according to the statute, or in all cases). At least some of the rights that plaintiffs assert could be implicated.

Although these are questions of great importance, they are only abstract questions at this point, and therefore non-justiciable. *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). These matters will be presented in a better light when a plaintiff can allege a realistic danger of direct injury. Both constitutional and prudential concerns weigh against finding justiciability at this time.

### *Conclusion*

For the reasons discussed above, defendant's motion to dismiss (docket #4) is **GRANTED.**

The action is **DISMISSED** for lack of standing and lack of ripeness.

**IT IS SO ORDERED.**

### *JUDGMENT*

Pursuant to the Order filed and entered on November 14th, 1995,

IT IS ADJUDGED that defendant's Motion to Dismiss is GRANTED.

IT IS FURTHER ADJUDGED that plaintiffs' cause of action is DISMISSED.

IT IS SO ORDERED.