# United States Court of Appeals
## For the First Circuit

No. 01-1133

ALTERNATIVE ENERGY, INC.,
BEAVER-CADILLAC, G.P., INC.,
BEAVER PLANT OPERATIONS, INC.,
CHRISTOPHER HUTCHINS,

Plaintiffs, Appellants,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY,

Defendant, Appellee.

―――――――――――――

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

―――――――――――――

Before

Boudin, Chief Judge,

Gibson,[*] Senior Circuit Judge,

and Torruella, Circuit Judge.

―――――――――――――

Jeffrey Bennett, with whom The Bennett Law Firm, P.A., Daniel G. Lilley and Daniel G. Lilley Law Offices, P.A., were on brief, for appellants.
Richard A. Simpson, with whom Lynda Guild Simpson, Jeffrey J. Ward, Ross, Dixon & Bell, L.L.P., Karen Frink Wolf and Friedman Babcock & Gaythwaite, were on brief, for appellee.

―――――――――――――

[*] Hon. John R. Gibson, of the Eighth Circuit, sitting by designation.

October 11, 2001

**TORRUELLA, <u>Circuit Judge</u>.** Appellants filed professional malpractice suits in Maine state court against attorneys John Lightbody, Peter Murray, and their law firm Murray, Plumb & Murray ("MPM Law Firm"), which was insured by appellee St. Paul Fire & Marine Insurance Company ("St. Paul"). St. Paul settled at least some of these claims in a 1998 settlement agreement. Appellants then filed a second claim against St. Paul, arising out of alleged malpractice by attorney Murray, under the theory that this claim was not covered by the 1998 agreement with St. Paul. The district court, based on its interpretation of the 1998 agreement, dismissed appellants' suit for failure to state a claim upon which relief can be granted. For the reasons discussed below, we affirm.

## BACKGROUND

In May 1997, appellants Alternative Energy, Inc., Beaver Cadillac, G.P., Inc., Beaver Plant Operations, Inc., and Christopher Hutchins brought legal malpractice and other claims in Cumberland County Superior Court (the "Maine lawsuit") against the MPM Law Firm and one of its attorneys, John Lightbody. Peter Murray, another attorney of the MPM Law Firm, was added as a defendant to the Maine lawsuit in August 1998. The claim against Murray did not arise until the summer of 1993.

Murray practiced law with the MPM Law Firm until May 1, 1993, when he established his own firm, Peter L. Murray Law Offices

-3-

("Murray Law Offices").  In addition, Murray remained "of counsel" to the MPM Law Firm after opening his own firm.  Murray represented the appellants in two different capacities relevant to the Maine lawsuit: as "of counsel" to the MPM Law Firm and as an attorney of Murray Law Offices.

St. Paul was the professional liability insurer for the MPM Law Firm and its employees, and Zurich American Insurance Company ("Zurich") issued professional liability insurance for Murray Law Offices.  Thus, two separate policies covered Murray, depending upon which hat he was wearing at the time of his actions.

In November 1998, appellants and St. Paul entered into a General Release and Indemnity Agreement ("1998 Settlement Agreement").  The 1998 Settlement Agreement provided that the appellants released all claims they had against "John C. Lightbody, Peter L. Murray, Murray, Plumb & Murray and its past and present officers, directors, stockholders, partners, and employees, and its insurer, St. Paul. . . except as provided below."  The 1998 Settlement Agreement then stated that the appellants:

> expressly reserve and do not release any and all claims, causes of action, or actions against Peter L. Murray, Peter L. Murray Law Offices, and their insurer, Zurich-American Insurance Company, with respect to any acts or omissions committed or performed by him in his legal representation of the Releasors [appellants], or any of them, from the date of May 1, 1993 to the present including, without limitation, all claims, causes

of action or actions for professional malpractice arising out of the representation of the Releasors, or any of them, by Peter L. Murray and Peter L. Murray Law Offices....

In April 2000, appellants entered into an agreement with Zurich ("Zurich Agreement") to settle the malpractice claims under Zurich's coverage. The Zurich Agreement settled claims against Murray Law Offices and Peter Murray, as attorney for Murray Law Offices, for actions taken on or after May 1, 1993.

Appellants then filed a First Amended Complaint for Declaratory Judgment against St. Paul for malpractice and other claims arising out of representation by Peter Murray in his "of counsel" capacity after May 1, 1993. Appellants sought a declaratory judgment that St. Paul, appellee, had a duty to defend and indemnify Murray with respect to these claims, and sought monetary damages arising out of St. Paul's refusal to defend and indemnify Murray.[1] St. Paul removed the action to federal court.

Appellee filed a Motion to Dismiss the Declaratory Judgment Complaint for failure to state a claim upon which relief could be granted and attached a copy of the 1998 Settlement Agreement. Appellee claimed that the 1998 Settlement Agreement between appellants and appellee released all claims against Murray covered by St. Paul's

---

[1] Murray assigned to appellants all claims and causes of action against St. Paul, arising on or after May 1, 1993, for defense and indemnity coverage under policies issued to the MPM Law Firm.

insurance, including any claims against Murray in his "of counsel" capacity to the MPM Law Firm on or after May 1, 1993.

The District Court for the District of Maine, finding that the 1998 Settlement Agreement "unambiguously released St. Paul," granted appellee's motion to dismiss. On December 19, 2000, the court entered judgment in favor of appellee. The district court determined that the 1998 Settlement Agreement was "a broad and general surrender of all claims against St. Paul and against Attorney Murray and the Murray, Plumb & Murray firm for malpractice within St. Paul's coverage." The express exception to the release, the court stated, did not include claims against Murray under St. Paul's insurance coverage. Rather, the district court asserted that "[t]he only reasonable reading of the exception is that it saved claims for the plaintiffs to assert against the Zurich-American coverage." The court reasoned that the 1998 Settlement Agreement demonstrated that St. Paul and appellants "thought they were laying matters to rest." Otherwise, if St. Paul was to remain subject to further liability, there would be no reason for St. Paul to settle.

Appellants filed a timely notice of appeal on January 12, 2001. They argue that the district court erred in three ways. First, the district court should not have considered the 1998 Settlement Agreement in deciding appellee's Rule 12(b)(6) motion to dismiss, because the agreement was not appended to or expressly incorporated in

-6-

the complaint.  Second, the district court erred in determining that the 1998 Settlement Agreement unambiguously released St. Paul, thereby prohibiting appellants' suit.  Third, the district court applied the wrong legal standard in evaluating the motion to dismiss.  We find appellants' arguments unconvincing on all counts.

## DISCUSSION

In an appeal from a district court's motion to dismiss under Rule 12(b)(6), this Court applies de novo review.  Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16 (1st Cir. 1998).  We first address appellants' claim that the district court erred in not granting their motion to strike the 1998 Settlement Agreement.

## A.  Consideration of the 1998 Settlement Agreement

In evaluating appellee's motion to dismiss for failure to state a claim, the district court took into consideration an attached copy of the 1998 Settlement Agreement, even though it was not appended to or incorporated in appellants' complaint.

In ruling on a motion to dismiss, a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs.  Id. Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment.  Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

-7-

There is, however, a narrow exception "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Id. When the complaint relies upon a document, whose authenticity is not challenged, such a document "merges into the pleadings" and the court may properly consider it under a Rule 12(b)(6) motion to dismiss. Beddall, 137 F.2d at 17; accord Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000) (considering advertising material outside of the complaint in a motion to dismiss false advertising claim because material was "integral" to assessing the complaint's allegations).

In this case, the district court properly took into consideration the 1998 Settlement Agreement in ruling on defendant's motion to dismiss.[2] The First Amended Complaint for Declaratory Judgment refers to the 1998 Settlement Agreement or its terms numerous times. Moreover, appellee's alleged liability under the complaint depends directly upon whether the "of counsel" claims are interpreted to have been released under the 1998 Settlement Agreement. Although

[2] St. Paul attached three documents to its motion to dismiss: the May 1997 complaint against the MPM Law Firm and Lightbody, the 1998 Settlement Agreement, and a St. Paul policy. The district court granted plaintiffs' motion to strike with respect to all but the 1998 Settlement Agreement. Since there is no appeal as to the other two documents, consideration of these documents is not before this Court.

appellants challenge the relevancy of the agreement to their motion,[3] they do not dispute its authenticity.

Under First Circuit precedent, when "a complaint's factual allegations are expressly linked to--and admittedly dependent upon--a document (the authenticity of which is not challenged)," then the court can review it upon a motion to dismiss. Beddall, 137 F.3d at 17. Since the appellants' complaint fails to state a claim unless appellee retains some measure of liability, which depends upon the interpretation of the 1998 Settlement Agreement, the district court properly considered the agreement in granting defendant's motion to dismiss.

Having determined that the 1998 Settlement Agreement became part of the pleadings for the motion to dismiss, we next address the meaning of the release.

## B.  Interpretation of the 1998 Settlement Agreement

Under Maine law, whether contract language is ambiguous is a question of law to be decided by the court. Lidstone v. Green, 469 A.2d 843, 846 (Me. 1983). A contract is ambiguous when the language "is reasonably susceptible of different interpretations." Id. (quoting Portland Valve, Inc. v. Rockwood Sys. Corp., 460 A.2d 1383, 1387 (Me.

---

[3] Appellants argue that the 1998 Settlement Agreement is not relevant to St. Paul's motion without the St. Paul policies to which the agreement applies. Appellants allege in their complaint that the "of counsel" claims against Murray are covered by "one or more" St. Paul policies.

1983)) (internal quotations omitted). Ambiguity is to be determined from the perspective of an ordinary or average person. <u>Nautilus Ins. Co.</u> v. <u>Jabar</u>, 188 F.3d 27, 30 (1st Cir. 1999) (finding that a pollution exclusion clause was ambiguous as to whether it excluded only environmental pollution or also fumes discharged by products used by insured); <u>American Employers' Ins. Co.</u> v. <u>DeLorme Publ'g Co., Inc.</u>, 39 F. Supp. 2d 64, 76-77, 82 (D. Me. 1999) (finding that the word "misappropriate" was not ambiguous and citing its ordinary meaning).

The district court determined as a matter of law that the 1998 Settlement Agreement was unambiguous because it was reasonably susceptible to only one interpretation: it released St. Paul from liability for all claims against the MPM Law Firm and its employees, including those against Murray in his "of counsel" status. The 1998 Settlement Agreement provides that the Releasors (appellants):

> release, acquit, and forever discharge John C. Lightbody, Peter L. Murray, Murray, Plumb & Murray. . . and its insurer, St. Paul Fire & Marine Insurance Company (hereinafter "the Releasees"), of and from any and all claims, causes of action, or actions which any of the Releasors has against any of the Releasees, except as provided below.

The release then states:

> the Releasors expressly reserve and do not release any and all claims, causes of action, or actions against Peter L. Murray, Peter L. Murray Law Offices, <u>and</u> their insurer, Zurich-American Insurance Company, with respect to any acts or omissions committed or performed by him in his

> legal representation of the Releasors, or any of
> them, from the date of May 1, 1993 to the
> present....

(emphasis added).

Appellants argue that, although the district court's understanding is one reasonable interpretation of the 1998 Settlement Agreement, it is not the only reasonable interpretation, so that the contract language should be found to be ambiguous. Appellants assert that the 1998 Settlement Agreement released St. Paul, except for any claims that may be made against Murray, in any of his capacities, arising on and after May 1, 1993. Appellants claim that the word "and" in the reservation to the release means "or," see Black's Law Dictionary 110 (3d ed. 1933), so that the 1998 Settlement Agreement reserves all claims, arising on or after May 1, 1993, that could be made against Peter Murray, Murray Law Offices, or Zurich. Under this interpretation, appellants did not release Peter Murray, regardless of the capacity in which he was working, from any claims arising on or after May 1, 1993. Thus, appellants insist they have a valid claim against St. Paul for actions arising from Murray's "of counsel" role on or after May 1, 1993.

Appellants' proffered interpretation of the 1998 Settlement Agreement, however, is not reasonable. "And" is not an ambiguous term. Although "and" might, in rare circumstances, be construed to mean "or," see Black's Law Dictionary 86 (6th ed. 1990), to the ordinary or

average person "and" means "and."  "And," in its conjunctive sense, also appears to be the plain meaning in the 1998 Settlement Agreement.

Moreover, if appellants had intended to explicitly reserve claims after May 1, 1993 against Murray in his "of counsel" capacity (as insured by St. Paul), then appellants should have either included St. Paul in the exception to the general release, or have circumscribed the general release as it relates to claims insured by St. Paul.  When verbal acrobatics are required to reach the interpretation of the settlement asserted by the appellants, we cannot say that the language is "<u>reasonably</u> susceptible of different interpretations." <u>Lidstone</u>, 469 A.2d at 846 (emphasis added).  "A contract need not negate every possible construction of its terms in order to be unambiguous." <u>Waxler</u> v. <u>Waxler</u>, 458 A.2d 1219, 1224 (Me. 1983) (finding that a divorce settlement agreement, which did not specifically provide or exclude a set-off against spousal payments, was unambiguous and clear on its face).  Therefore, the district court properly determined that the 1998 Settlement Agreement, which was clear on its face, was unambiguous.

When a contract is unambiguous, the interpretation of such contract is left to the court. <u>Lidstone</u>, 469 A.2d at 846.  The court must construe the unambiguous language in accordance with its plain and generally accepted meaning. <u>Id.</u>  The 1998 Settlement Agreement provides that all claims against Peter Murray or the MPM Law Firm that are insured by St. Paul are released, and that appellants only reserved

claims against "Peter L. Murray, Peter L. Murray Law Offices, and their insurer Zurich" (emphasis added). In accordance with the plain conjunctive meaning of "and," appellants reserved only those claims against Peter Murray, arising out of his work as an attorney for Murray Law Offices, for which he was insured by Zurich. Thus, under the unambiguous language of the 1998 Settlement Agreement, all claims against Peter Murray in his "of counsel" capacity, since these would be insured by St. Paul, were released.

## C.  Standard for Granting a Motion to Dismiss

The purpose of a motion to dismiss "is to determine whether the complaint alleges facts sufficient to state a cause of action." Beddall, 137 F.3d at 17. In deciding on the motion, the court is to assume all plaintiffs' allegations are true and make all reasonable inferences in favor of the plaintiffs. Id. at 16.

Appellants assert that the district court erred in granting appellee's motion to dismiss because the complaint is legally sufficient. In light of the 1998 Settlement Agreement, however, which became part of the pleadings for the 12(b)(6) motion, as discussed above, and the district court's finding that the agreement was unambiguous and released St. Paul from liability as a matter of law, appellee cannot be held liable by appellants for these claims. Therefore, the plaintiffs' complaint did fail to state a claim upon which relief could be granted.

## CONCLUSION

We conclude that the district court properly granted appellee's motion to dismiss under Rule 12(b)(6) based on the unambiguous language of the 1998 Settlement Agreement releasing appellee from liability.  **Affirmed**.