Kathryn McINNIS–MISENOR and Brett Misenor, Plaintiffs

v.

**MAINE MEDICAL CENTER,** Defendant

No. CIV.01–246–P–C.

United States District Court, D. Maine.

July 30, 2002.

 

Deirdre M. Smith, Drummond, Woodsum & MacMahon, Portland, ME, for Kathryn McInnis–Misenor, Brett Misenor, plaintiffs.

Margaret C. Lepage, Pierce, Atwood, Portland, ME, for Maine Medical Center, defendant.

## ORDER AFFIRMING THE RECOM-·MENDED DECISION OF THE MAGISTRATE JUDGE

GENE CARTER, District Judge.

The United States Magistrate Judge having filed with the Court on June 25, 2002, with copies to counsel, his Recommended Decision on Defendant's Motion to Dismiss (Docket No. 13); and Plaintiff having filed her objection thereto on July 8, 2002, (Docket No. 14), to which objection Defendant filed its response on July 25, 2002 (Docket No. 15); and this Court having reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record; and this Court having made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision, and concurring with the recommendations of the United States Magistrate Judge for the reasons set forth in his Recommended Decision, it is **ORDERED** as follows:

(1) Plaintiff's objection is hereby **DENIED**:

(2) The Recommended Decision of the Magistrate Judge is hereby **AFFIRMED**;

(3) Defendant's Motion to Dismiss is hereby **GRANTED**;

(4) Plaintiff's Complaint is hereby **DISMISSED** without prejudice.

## RECOMMENDED DECISION ON DEFENDANT'S MOTION TO DISMISS

DAVID M. COHEN, United States Magistrate Judge.

Maine. Medical Center ("MMC") moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss Count I of the instant complaint on the basis that Kathryn McInnis–Misenor and her husband, Brett Misenor, who seek pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, to compel MMC to render a birthing center wheelchair-accessible in anticipation of a future pregnancy, lack standing to pursue the relief requested. Motion To Dismiss Amended Complaint, etc. ("Motion") (Docket No. 10) at 1; Plaintiff's [sic] First Amended Complaint ("Complaint") (Docket No. 9) ¶¶ 1, 24–29 & p. 7. MMC further urges that the court, upon dismissing Count I, decline to exercise its supplemental jurisdiction over Count II, the Misenors' remaining state-law-based claim. Motion at 1; Complaint ¶¶ 30–35. For the reasons that follow, I recommend that the Motion be granted.

### I.  Applicable Legal Standards

"When evaluating a motion to dismiss under Rule 12(b)(6), [the court] take[s] the well-pleaded facts as they appear in the complaint, extending [the] plaintiff every reasonable inference in his favor." *Pihl v. Massachusetts Dep't of Educ.*, 9 F.3d 184, 187 (1st Cir.1993). The defendant is entitled to dismissal for failure to state a claim only if "it appears to a certainty that the plaintiff would be unable to recover under

any set of facts." *Roma Constr. Co. v. aRusso,* 96 F.3d 566, 569 (1st Cir.1996); *see also Jackson v. Faber,* 834 F.Supp. 471, 473 (D.Me.1993).

Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001). "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (citation and internal quotation marks omitted).

◼ In this case, MMC relies in part on facts extracted from a Maine Human Rights Commission investigator's report issued in the instant case, which it characterizes as (i) a document the authenticity of which is not disputed by the parties, (ii) an official public record and (iii) emanating from proceedings that are referred to in the Complaint. Motion at 3 n. 1. The Misenors protest that the document in question is not referenced in the Complaint and is not a public document; however, they do not contest its authenticity. Plaintiffs' Objection to Defendant's Motion To Dismiss Amended Complaint ("Objection") (Docket No. 11) at 2 n. 1. On that basis, the report may be considered without converting the Motion to one for summary judgment.[1]

## II. Factual Context

For purposes of this Motion I accept the following as true.

MMC is a Maine non-profit corporation that owns and operates a hospital located in Portland, Maine. Complaint ¶ 9. MMC engages in the delivery of health-care services to members of the public, including patients identified as having high-risk pregnancies. *Id.* The maternity unit at MMC is referred to as the "Family Birth Center." Investigator's Report PA00–0209 ("MHRC Report"), *McInnis–Misenor v. Maine Med. Ctr.* (Me. Human Rights Comm'n May 22, 2001), attached as Exh. A to Declaration of Margaret Coughlin LePage (Docket No. 3), ¶ IV(1)(b). The "Family Center" (postpartum) and "Birth Center" (labor and delivery) are in separate wings of the Family Birth Center, connected by hallways and a sitting area. *Id.* Patients giving birth generally are admitted to the MMC Birth Center for labor and delivery. Complaint ¶ 16. If, after delivery, there is a vacancy in the Family Center, patients are usually—but not always—moved there for postpartum recovery. MHRC Report ¶ IV(3)(c).

Kathryn McInnis–Misenor and her husband, Brett Misenor, are residents of Portland. Complaint ¶¶ 5, 7. McInnis–Misenor, who is 42 years old, has juvenile rheumatoid arthritis, which affects all of the major joints in her body. *Id.* ¶ 6. She is unable to walk and uses a wheelchair. *Id.* She resides in the vicinity of MMC, has received services from it and will have need to use its services again in the future. *Id.*

The Misenors are presently actively attempting to become pregnant with their second child. *Id.* ¶ 12. As a result of McInnis–Misenor's age, disability, physical size and pelvis shape, her obstetrician has

---

1. I agree with the Misenors that two additional free-standing facts set forth by MMC—that it plans to build a new maternity hospital and that a woman's fertility decreases after age 40—are not properly before the court. Objection at 2 n. 1; *see also* Motion at 13 n. 10, 14 n. 11.

advised the Misenors that any pregnancy would be considered "high risk." *Id.* ¶ 13. MMC is the hospital located closest to the Misenors and the only hospital in the Greater Portland area that can accommodate a high-risk delivery. *Id.* ¶ 14. McInnis–Misenor's obstetrician, who specializes in high-risk pregnancies, can deliver babies only at MMC. *Id.* Accordingly, MMC is the only facility located in the vicinity of the Misenors' home where McInnis–Misenor can give birth. *Id.*

The patient rooms and other areas of the Family Center are not accessible to McInnis–Misenor and other people who use wheelchairs because, *inter alia,* the bathrooms in the those rooms are not large enough to accommodate a wheelchair. *Id.* ¶ 17. During November 8–15, 1999 McInnis–Misenor was hospitalized at MMC prior to and after the birth of the Misenors' daughter by cesarean section. *Id.* ¶ 18. In anticipation of the delivery of McInnis–Misenor's first child, MMC spent approximately $5,300 to reconfigure a private room on the Birth Center wing to make it more accessible for her. MHRC Report ¶ IV(5)(b). However, because architectural barriers render the Family Center inaccessible to McInnis–Misenor, she could not be transferred there after her daughter's birth, unlike nondisabled mothers. Complaint ¶ 19. She remained in the Birth Center throughout her week-long hospitalization. *Id.*

Prior to and subsequent to McInnis–Misenor's 1999 hospitalization, the Misenors asked MMC to remove the architectural barriers that prevent them from using the Family Center, but MMC has refused to do so. *Id.* ¶ 20. As a result, the Misenors will have to remain in the Birth Center during any future maternity-related hospitalization at MMC. *Id.*

## III. Analysis

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (citations and internal quotation marks omitted). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Id.* (citation and internal quotation marks omitted). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561, 112 S.Ct. 2130 (citation and internal quotation marks omitted). The party invoking federal jurisdiction bears the burden of establishing these elements. *Id.*

The instant motion implicates the first prong of this tripartite test. MMC argues, in essence, that for purposes of pursuing prospective (injunctive) relief pursuant to the ADA, the Misenors have suffered no "injury in fact." *See, e.g.,* Motion at 12. I agree.

In Count I of their complaint, the Misenors assert that because they "continue to live near Defendant, plan to have another child and therefore will need to seek services from MMC in the future, there is a real and immediate threat that they will be subjected to violations of their federally-protected civil rights in the absence of injunctive relief." Complaint ¶ 28. They seek modification of the bathroom in a single patient room in the Family Center

to permit access and use by a person in a wheelchair. Objection at 7.

MMC views the Misenors' situation quite differently, contending that they would suffer the injury they seek to forestall only upon the happening of a "chain of speculative contingencies"—that "(1) Plaintiff Kathryn McInnis–Misenor in fact became pregnant, (2) she was able to carry the baby to viability, (3) she chose to give birth at MMC, and (4) ... at the time she gave birth, there was a vacancy in the Family Center into which the Plaintiffs could be moved." Motion at 12. On close inspection, the majority of the links in MMC's chain prove weak. Construing the facts in the light most favorable to the Misenors (as I must in this Rule 12(b)(6) posture), I find that were McInnis–Misenor to become pregnant, she would be able to carry the baby to viability; were she to need to be hospitalized for obstetrical care, she would certainly seek that care at MMC; and were she to give birth in the Birth Center, the Family Center would almost certainly have a vacancy.

█ Nonetheless, the Misenors lack standing for one simple reason: McInnis–Misenor is not pregnant. Even granting that she remains of childbearing age and that the Misenors are actively attempting to achieve pregnancy, it is inherently unknowable when (if ever) McInnis–Misenor will become pregnant. Far from being "actual or imminent," the harm the Misenors fear is conjectural; if McInnis–Misenor never becomes pregnant, they will nev-er confront it. See, e.g., Lujan, 504 U.S. at 565 n. 2, 112 S.Ct. 2130 ("Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending.") (citation and internal quotation marks omitted) (emphasis in original).[2]

The parties do not cite, nor can I find, a case squarely on point. However, in cases in which plaintiffs have sought injunctive relief to prevent a harm that necessarily would befall only a pregnant individual, non-pregnancy generally has been viewed as fatal to standing. See, e.g., Roe v. Wade, 410 U.S. 113, 128, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (holding that couple whose claim was predicated on "possible future contraceptive failure, possible future pregnancy, possible future unpreparedness for parenthood, and possible future impairment of health" lacked standing in abortion-rights case; "[a]ny one or more of these several possibilities may not take place and all may not combine."); Abele v. Markle, 452 F.2d 1121, 1124 (2d Cir.1971) (holding that non-pregnant plaintiffs had no standing to challenge abortion statute solely on basis of their childbearing age; noting, "Although some of them may in the future become pregnant and may in such event desire an abortion ... it is also possible that they will not become pregnant or that if they do they will, upon further reflection, decide for other reasons

2. McInnis–Misenor argues, inter alia, that the fact that she alleges in her complaint that she is "likely" to need to use MMC's services again suffices to stave off dismissal under Rule 12(b)(6) standards. Objection at 2. However, she must show not only that she is "likely" to use its services again but also that the prospect of the feared harm is "imminent." See, e.g., Lujan, 504 U.S. at 564, 112 S.Ct. 2130 ("[T]he affiants' profession of an 'inten[t]' to return to the places they had visited before—where they will presumably, this time, be deprived of the opportunity to observe animals of the endangered species—is simply not enough. Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.") (emphasis in original).

against an abortion.... It is clear that any threat of harm to them is remote and hypothetical."); *Doe v. Division of Youth & Family Servs.*, 148 F.Supp.2d 462, 478–80 (D.N.J.2001) (holding that proposed amendment of complaint to add prayer for injunctive relief against enforcement of policy of seizing newborns based on refusal of HIV-positive mother to administer AZT to infant futile for lack of standing; "mere conjecture," *inter alia*, "that this HIV-positive plaintiff will again become pregnant"); *Akron Ctr. for Reprod. Health v. Rosen*, 633 F.Supp. 1123, 1128 (N.D.Ohio), *judgment amended on other grounds*, 110 F.R.D. 576 (N.D.Ohio 1986), *aff'd on other grounds sub nom. Akron Ctr. for Reprod. Health v. Slaby*, 854 F.2d 852 (6th Cir. 1988), *rev'd on other grounds sub nom. Ohio v. Akron Ctr. for Reprod. Health*, 497 U.S. 502, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) (holding that plaintiff who averred that she was currently sexually active, uncertain whether or not she was pregnant and would seek an abortion if pregnant lacked standing to challenge constitutionality of Ohio parental-notification abortion statute); *Nyberg v. City of Virginia, Minn.*, 361 F.Supp. 932, 936 (D.Minn. 1973), *aff'd*, 495 F.2d 1342 (8th Cir.1974) (following reasoning of *Abele* and "refus[ing] to allow standing solely on the basis of a woman's child-bearing age" in abortion-rights case); *DiNino v. State of Washington*, 102 Wash.2d 327, 684 P.2d 1297, 1298, 1300 (1984) (holding that woman of childbearing age who was not pregnant and not diagnosed as suffering from a terminal condition lacked standing to challenge statute addressing termination of life-sustaining treatment for pregnant women; claims presented "a purely hypothetical and speculative controversy.").[3]

The Misenors point to *Atakpa v. Perimeter OB–GYN Assocs., P.C.*, 912 F.Supp. 1566 (N.D.Ga.1994), in which the District Court for the Northern District of Georgia held the plaintiff lacked standing to seek to enjoin the defendant's obstetrical HIV testing procedures not because she was not pregnant, but rather because she had failed to allege that she ever would seek services from the defendant again. Objection at 10–11; *Atakpa*, 912 F.Supp. at 1574 ("Plaintiff's nonpregnant state is not the reason she lacks standing because she is still in childbearing years and could presumably become pregnant again.") (footnote omitted). However, this was mere dictum, and the court did not acknowledge the existence of caselaw to the contrary. Hence, I find it unpersuasive.

I consider one final point—the Misenors' argument that "[i]n order to follow Congress' remedial aim when it enacted the ADA, it is better to permit this case to proceed now with the *possibility* that Ms. McInnis–Misenor may have difficulty conceiving, than to wait until it is certain that the McInnis–Misenors will need the Family Center, at which time it would be too late to remedy the discrimination." Objection at 18. The Misenors posit that, given the short time frame between diagnosis of a pregnancy and birth and the nature of

---

**3.** Of course, there is a distinction between merely being of childbearing age and actively attempting to become pregnant. Nonetheless, for these purposes, it is a difference in degree and not kind. While arguably the odds are greater that a person attempting to become pregnant will become so, the existence of uncertain odds that the predicate(s) to harm will occur does not translate to a showing of "imminence" for purposes of "injury in fact" analysis. *See Los Angeles v. Lyons*, 461 U.S. 95, 108, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) ("We cannot agree [with the court of appeals] that the 'odds' that Lyons would not only again be stopped for a traffic violation but would also be subjected to a chokehold without any provocation whatsoever are sufficient to make out a federal case for equitable relief.") (citation omitted).

the injunctive relief sought (requiring architectural modification of barriers) "there may not be sufficient time to complete such barrier removal prior to Ms. McInnis–Misenor's labor and delivery if one party or the other seeks an appeal of any order entered by this Court, particularly if this Court denies injunctive relief." *Id.* at 17 (footnote omitted).

The effectuation of the remedial goals of the ADA—as important as it is—is not a concern to which the requirements of standing must yield. *See, e.g., Blake v. Southcoast Health Sys., Inc.,* 145 F.Supp.2d 126, 136 (D.Mass.2001) ("Even if Congress *intended* to empower federal courts [via the ADA] to issue injunctions absent a showing of future harm, Congress does not have the *power* to circumvent constitutionally mandated standing requirements.") (emphasis in original). In any event, there is no reason to believe that requiring the Misenors to wait to sue until McInnis–Misenor is pregnant would, as a practical matter, leave them remediless under the ADA. As MMC points out, Defendant's Reply Brief in Support of Its Motion To Dismiss ("Reply") (Docket No. 12) at 2–3 & n. 1, this court has a demonstrated ability to move along a case involving needed injunctive relief, and if such an injunction were granted, would have dis-

cretion to deny a stay pending appeal, *see also, e.g., In re Medomak Canning Co.,* 123 B.R. 671, 672 (D.Me.1991) ("In evaluating [a] motion for a stay pending appeal, the Court must consider factors similar to those generally considered in determining whether to grant a preliminary injunction: appellant's likelihood of success on the merits; irreparable harm to the appellant if the stay is not granted; harm to the other party if the stay is granted; and whether the public interest would be affected by granting of the stay."). Moreover, as MMC also observes, Reply at 4–5, to the extent the Misenors fail to attain standing to seek the relief here requested, they are free to press the attorney general to seek such relief, *see, e.g.,* 42 U.S.C. § 12188(b); *Blake,* 145 F.Supp.2d at 136.[4]

The bottom line is that the Misenors do not have standing to ask this court to compel MMC to make the architectural modifications sought. They will not have such standing until such time (if any) as McInnis–Misenor becomes pregnant.[5]

For the same reasons that the Misenors lack standing to seek injunctive relief, they lack standing to seek declaratory relief pertaining to the identical asserted harm. *See, e.g., Berner v. Delahanty,* 129 F.3d 20, 24 (1st Cir.1997) (when declaratory or in-

---

**4.** The Misenors protest that even if the line for standing were drawn at pregnancy, rather than birth, questions would remain. Objection at 17 n. 7. "What if Plaintiffs suffered a miscarriage during the pendancy [sic] of the litigation; would the claims then be dismissed? Would they need to re-file each time they become pregnant with the hope that they will carry the birth to term? There is nothing in the standing requirement that compels such a harsh result." *Id.* These fears implicate mootness rather than standing and thus are attenuated from the issues now before the court. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.,* 528 U.S. 167, 189–92, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (distinguishing between standing, which is determined as of the time of filing of

an action, and mootness, which concerns post-filing events).

**5.** As MMC concedes, it is not necessary that McInnis–Misenor give birth to attain standing; rather, the achievement of pregnancy is sufficient. *See* Reply at 2 (clarifying that MMC had "not argued, contrary to Plaintiffs' assertions, that Plaintiffs would lack standing in this case until Ms. McInnis–Misenor actually gave birth. Rather, MMC argues that until Ms. McInnis–Misenor is pregnant, the prospect that she will indeed need access to MMC's maternity ward is too speculative to confer standing for injunctive relief.") (citation omitted).

junctive relief sought, standing inheres only when complainant can establish that feared harm is "actual or imminent") (citation omitted); *Blake,* 145 F.Supp.2d at 137 n. 16 ("Although *Lyons* focused on injunctive relief, the same principles [on standing] apply to declaratory judgments."). I therefore recommend that Count I be dismissed for lack of standing.

One issue remains: whether, with regard to Count II of the instant complaint, the court should make an exception to its general practice of declining to exercise supplemental jurisdiction over a pendent state claim when a plaintiff's foundational federal claims are dismissed before trial. *See United Mine Workers of Am. v. Gibb,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.") (footnotes omitted); *Camelio v. American Fed'n,* 137 F.3d 666, 672 (1st Cir.1998) ("[T]he balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation.").

The Misenors argue that such an exception should be made in this case inasmuch as they otherwise will be precluded from litigating their state and federal claims in the same action. Objection at 19–20 & n. 12. As MMC notes, Reply at 7, this is not necessarily so. The parties agree that the claims should be dismissed without prejudice. Objection at 19–20 n. 11; Reply at 7. If the instant claims are dismissed, the Misenors will be obliged by statute-of-limi-

tations concerns to re-file their state-law claim immediately in state court. *See* Objection at 20 n. 12; 28 U.S.C. § 1367(d). Should they achieve standing as to their ADA claim during the pendency of that proceeding, the state court would have concurrent jurisdiction to hear it. *See, e.g., Jones v. Illinois Central R.R. Co.,* 859 F.Supp. 1144, 1145 (N.D.Ill.1994) ("state courts have concurrent jurisdiction over ADA claims").

## IV.  Conclusion

For the foregoing reasons, I recommend that the court **GRANT** the Motion and that the Complaint be **DISMISSED** without prejudice.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*