**Francis E. CULLEN, Jr., Plaintiff,**

v.

**Gerard MATTALIANO, Individually and as Chief of Police; Lt. David MacDonald, Individually and as Station Supervisor; Michael Breen, Individually and as Patrolman; Town of Milton; Lt. Joseph W. Gaughan, Individually and as Detective; Paul T. Nolan, Individually and as Patrolman; and Charles F. Paris, Individually and as Patrolman, Defendants.**

Civ. A. No. 85–3976–Y.

United States District Court,
D. Massachusetts.

June 2, 1988.

**94**

Francis Cullen, Norfolk, Mass., pro se.

Robert O'Leary, Quincy, Mass., Edward Reardon, Reardon & Reardon, Worcester, Mass., for defendants.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

Defendants Gerard Mattaliano ("Mattaliano"), David MacDonald ("MacDonald"), Michael Breen ("Breen"), and the Town of Milton (the "Town") have petitioned this Court to grant summary judgment in their favor against the plaintiff, Francis E. Cullen, Jr. ("Cullen"). Cullen has filed a *pro se* civil rights complaint alleging that these defendants, among others, violated his 4th, 5th, and 14th Amendment rights through their actions which culminated in Cullen's arrest on February 5, 1983 for shooting two Milton police officers and attempting to break into a neighboring dwelling.

### I. *Factual Background*

Viewing the record that is now before the Court in the light most favorable to the non-moving party, and considering all inferences favorable to that party, *Ismert and Associates, Inc. v. New England Mutual Life Ins. Co.*, 801 F.2d 536, 537 (1st Cir. 1986), the following facts could be reasonably found.

In the early morning hours of February 5, 1983, Cullen returned to his home at 340 Central Avenue, Milton, Massachusetts. After checking that his van was locked, Cullen was walking down the driveway adjacent to the house when he heard a vehicle approaching along Central Avenue. Certain that it was a Milton police officer,

Cullen threw a rock which struck the marked cruiser. The cruiser stopped, turned around and pulled over near the driveway. Officer Paul Nolan ("Nolan") exited the cruiser and began walking up the driveway toward Cullen. Nolan's hands were empty. When Nolan was within approximately 15 to 20 feet of him, Cullen fired three rounds at him. Two of the rounds struck Nolan in the right leg and left shoulder respectively, causing him to fall to the ground.

Cullen turned and ran around the rear of his house to the opposite front corner. From that vantage point he fired on Nolan's backup, Officer Charles E. Paris ("Paris"), who had come to the aid of the wounded officer. Although shot in the back, Paris was able to return gunfire.

Cullen then ran through three adjacent back yards to the rear of the home of Attorney Thomas J. Nolan ("Attorney Nolan") at 352 Central Avenue. Apparently Attorney Nolan had represented Cullen in the past. When no one responded to the doorbell, Cullen broke a small pane of glass in the door to gain access to the house. Cullen maintains that he wanted to get into the house to be in Attorney Nolan's presence because he feared unwitnessed apprehension by the Milton police.

Meanwhile, the Milton police had received a report of an attempted break-in at Attorney Nolan's house. Officer Breen heard the radio transmission of the break-in shortly after arriving at the shooting scene down the street. He and Paris proceeded on foot to investigate. While approaching the rear entrance of Attorney Nolan's house, Breen saw Cullen on the back steps.[1] Breen approached Cullen with his service revolver drawn and ordered him to place his hands against the house and spread his legs. Cullen complied and Breen then holstered his gun.

At this point, the parties' stories begin to sharply diverge. According to Cullen, he

---

1. Breen stated that he believed Cullen was the person who shot Nolan and Paris earlier because of various factors, including the description he received at the shooting scene, Cullen's

proximity to the scene, the late hour, the fact that Cullen was now breaking into 352 Central Avenue, and Cullen's past criminal record with which he was familiar.

did not resist arrest at all. Nevertheless, after handcuffing him, Cullen says, Breen drew his service revolver and struck him in the head, causing him to black out and fall to the ground. While unconscious, Cullen maintains he was kicked and punched by Breen in the face, torso, and extremities. Upon regaining consciousness, Cullen asserts he found Breen kneeling on his back with his service revolver pointing "point blank" at the back of his head. Cullen says he looked up, saw Attorney Nolan at a window and called to him. Breen quickly reholstered his gun. Cullen further claims that Breen resumed kicking him in the head and back while they were alone in the rear of the police wagon on the way to the police station.

At the station Cullen was charged with two counts of assault with intent to murder, two counts of assault and battery with a dangerous weapon, attempted breaking and entering in the nighttime, and illegal possession of a firearm. At some point after his booking, Cullen was taken to Carney Hospital in Dorchester for treatment of a cut he apparently received from his encounter with Breen. The record contains a Carney Hospital bill for the visit which states, "Assaulted, Multiple Injuries."

At trial Cullen was convicted of all of the charges except the attempted break-in. He is currently serving a sentence in the Massachusetts Correctional Institute in Norfolk, Massachusetts.

The current claim, brought under 42 U.S. C. sec. 1983, was filed on October 23, 1985. Because the complaint has been amended twice and charges multiple defendants with various civil rights violations, the Court will outline the specific allegations against each defendant in the section dealing with that defendant.

II. *Standard for Summary Judgment*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure,[2] the party seeking summary judgment must inform the court of the basis of its motion and identify those portions of " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' " which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2533, 91 L.Ed.2d 265 (1986) (quoting Fed.R. Civ.P. 56). Where, however, the nonmoving party will bear the burden of proof on an issue at trial, "Rule 56(e) ... requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogtories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. at 2553; *see Moody v. Maine Central R.R. Co.*, 823 F.2d 693, 694 (1st Cir.1987); *cf. Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976) (nonmovant must establish the existence of an issue of fact by substantial evidence that is both genuine and material).

III. *Defendants Mattaliano and MacDonald's Claims of Qualified Immunity*

A. Qualified Immunity.

Courts have long recognized a "good faith" or qualified immunity "for police

2. Fed.R.Civ.P. 56 provides, in relevant part:

(c) Motion and Proceedings Thereon.... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

(e) Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

96

conduct that, although unlawful, was not unreasonable under the circumstances." *Bibbo v. Mulhern,* 621 F.Supp. 1018, 1026 (D.Mass.1985). The Supreme Court devised an objective test for qualified immunity in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), concluding that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738. *See also Anderson v. Creighton,* — U.S. —, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (holding that government officials are provided with qualified immunity so long as their actions could have been reasonably thought consistent with the rights they are alleged to have violated).

Furthermore, the Supreme Court indicated that summary judgment was the correct way to resolve qualified immunity cases, admonishing that "[i]nsubstantial lawsuits undermine the effectiveness of government...." *Harlow,* 457 U.S. at 819, n. 35, 102 S.Ct. at 2738, n. 35. The First Circuit has interpreted *Harlow* to mean that

> [A] plaintiff, before commencing suit, must be prepared with a prima facie case of defendant's knowledge of impropriety, actual or constructive. In order to defeat a motion for summary judgment ..., a plaintiff must show more than 'a mere desire to cross-examine' but must furnish '[a]ffidavits or sworn or otherwise reliable statements of witnesses.' Alternatively, but with a much higher burden than is borne by the plaintiff who opposes an ordinary summary judgment motion, a plaintiff may ... avoid summary judgment ... by making a persuasive showing that affirmative evidence would be available, and giving a valid excuse for nonproduction. To hold less would defeat the entire purpose of freeing government officials from having to defend insubstantial suits.

*Krohn v. United States,* 742 F.2d 24, 31–32 (1st Cir.1984).

## B. Mattaliano.

■ Cullen claims that Mattaliano, as Chief of the Milton Police Department, was responsible for continuing a "scheme of harassment" of Cullen initiated by Mattaliano's predecessor, and that Mattaliano had "knowledge of," "approved of," and "had the power to prevent" this alleged scheme.[3]

However, Cullen has produced no factual evidence to support his allegations. Instead, in opposing Mattaliano's claim of qualified immunity, Cullen relies primarily on the conclusory allegations stated in his complaint. What factual discrepancies he does point out in the record,[4] however, are not material to Mattaliano's claim of qualified immunity and cannot be considered by this Court when reviewing a summary judgment motion on the grounds of quali-

---

3. Cullen claims that this "scheme of harassment" (which allegedly began in 1975 when Mattaliano's predecessor "targeted" Cullen for surveillance because he considered Cullen "reprehensible and unworthy of participating in a liberal single life style" that involved "casual encounters with females") included the following: (1) each night for three years when Cullen came home from work after midnight, two Milton police cruisers would be waiting nearby to conduct "headgames" such as shining spotlights in his face while an undercover agent who had been positioned in a neighboring dwelling to watch him "made noises simulating the sound of gunfire;" (2) each night police notified of his impending arrival home a group of neighborhood "hooligans" who would then be waiting "to throw bottles and rocks or shout profanities" at him; and (3) on two occasions in 1982 a Milton police officer "feigned an attempt to run [him] down" while he was jogging. Cullen "sensed" that "police officials directing the activities were intentionally jeopardizing the safety of their subordinates in the hope of provoking" him.

4. These discrepancies in the record are: (1) differences between Nolan's and Paris' accounts of the shooting, and (2) MacDonald's answers to interrogatories stating that there was no car accident in Nolan's assigned sector, which are contrary to Nolan's report stating that he was in his assigned sector after assisting with a car accident. Cullen argues that there is a question concerning why Nolan was in Sector 3A (i.e., Cullen's neighborhood) when the Police Department worksheets show he was assigned to Sector 3B. Such a discrepency, Cullen claims, lends more support to his version of the facts than to the defendants' version.

fied immunity. *See Floyd v. Farrell*, 765 F.2d 1, 6 (1st Cir.1985) (holding that factual disputes will result in denial of summary judgment *only* when they pertain to the qualified immunity defense).

No factual evidence whatsoever has been adduced which indicates that Mattaliano could have, or even should have, known that his subordinates had been violating any of Cullen's clearly established constitutional rights for years preceding the night of the shootings. This Court must, therefore, conclude that Cullen has failed to establish that a genuine issue of material fact exists that, if decided in his favor, would defeat the defense of qualified immunity pursuant to the standard dictated by *Harlow*, and hereby grants summary judgment for Mattaliano.

### C. MacDonald.

■ According to Cullen, MacDonald, as Station Supervisor, instigated the "chain of events" leading up to the events of February 5, 1983, by ordering, directing, participating in and approving of the "systematic scheme of harassment and intimidation." *See supra* note 3. He further alleges that MacDonald filed "false charges" against him based upon the events of February 5, 1985.

As with Mattaliano, the record before the Court contains insufficient factual evidence with which Cullen can rebut MacDonald's qualified immunity defense as matter of law. Indeed, other than the conclusory allegations in both his complaint and his affidavit, Cullen never mentions MacDonald's participation in any of the alleged "incidents of harassment," nor has he indicated elsewhere in the record where specific facts show a genuine issue for trial. *Celotex* clearly mandates that Cullen may not rest on mere pleadings when discharging his burden of production as the non-moving party rebutting a summary judgment motion. 477 U.S. at 324, 106 S.Ct. at 2553. Therefore, this Court grants

summary judgment for MacDonald on the grounds of qualified immunity.

Turning to Cullen's claim of "false charges" by MacDonald, it is clear from the record that MacDonald had more than enough probable cause with which to charge Cullen with the crimes listed above. *See supra* at 4. Indeed, Cullen himself admitted to shooting the two officers, carrying an unregistered gun, and breaking a pane of glass in an attempt to enter Attorney Nolan's house. What provoked him to these actions is immaterial to the issue of whether MacDonald had sufficient probable cause to charge him with the crimes. This Court concludes that, as matter of law, Cullen cannot sustain allegations of false charges against MacDonald, and grants summary judgment in MacDonald's favor.

### IV. *The Town of Milton's Claim of Freedom from Municipal Liability*

■ Cullen has alleged that the Town of Milton maintained a "policy and custom of harassing" him for several years prior to his arrest on February 5, 1983.[5] The Town claims that it is shielded from any liability because there is no evidence that it adopted the alleged policy or custom of harassment. For reasons illustrated below, this Court agrees.

The Supreme Court has held that municipal liability only may only be imposed for injuries inflicted pursuant to the municipality's "policy or custom." *Monell v. Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Thus, *Monell* made clear that municipalities could not be held liable under a theory of *respondeat superior* for the actions of their employees which violated constitutional rights. The "custom or policy" requirement was later clarified as "intend[ing] to prevent the imposition of municipal liability under circumstances where no wrong could be ascribed to municipal decisionmakers." *City of Oklahoma City v. Tuttle*, 471 U.S.

---

5. *See supra* note 3 for a description of some of the alleged harassment. In addition, Cullen contends that the Town's "systematic scheme of harassment included constant surveillance, ter-

rorizing plaintiff's female companions, pressuring plaintiff's employer to fire him, a smear campaign, and intimidating plaintiff's friends."

808, 821, 105 S.Ct. 2427, 2435, 85 L.Ed.2d 791 (1985). *Oklahoma City* further required "an affirmative link between the policy and the particular constitutional violation alleged." *Id.* at 823, 105 S.Ct. at 2436.

This Court has stated that "a plaintiff who seeks to hold a municipality liable under sec. 1983 must prove '(1) a policy (2) of the city's policymaker (3) that caused (4) the plaintiff to be subjected to a deprivation of constitutional right.'" *Bibbo v. Mulhern,* 621 F.Supp. 1018, 1027 (D.Mass. 1985) (*quoting Grandstaff v. City of Borger,* 767 F.2d 161 [5th Cir.1985] ).

Even when taken in the light most favorable to him as the non-moving party, Cullen's affidavit and references to the record before this Court fail to put forth any facts that raise the inference that the policymakers of the Town of Milton "impliedly or tacitly authorized, approved or encouraged harassment" of him. *See Turpin v. Mailet,* 619 F.2d 196, 201 (2nd Cir.), *cert. denied sub nom. Turpin v. City of West Haven,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980). He admits that he never complained to the Town of the alleged incidents of police harassment. Other than reference to the conclusory allegations in his amended complaint in rebuttal to the Town's motion, Cullen has absolutely no evidence even hinting of a Town policy or custom of harassing him. It appears, instead, that he is attempting to hold the Town liable under the *respondeat superior* theory which is not applicable in such actions pursuant to *Monell.*

Accordingly, summary judgment is granted on behalf of the defendant Town of Milton.

V. *Breen's Claim that Any Force Employed was Exerted in Good Faith to Maintain Order*

■ Cullen alleges that Breen used unjustified and excessive force while arresting him, and that such actions caused him to suffer physical harm as well as intentionally-inflicted emotional distress. He claims that Breen's conduct violated his 4th, 5th and 14th amendment rights.

In his affidavit supporting his motion for summary judgement, Breen denies Cullen's allegations. Furthermore, Breen argues that, because he had probable cause to believe Cullen was the person who had just shot two Milton police officers, he was well within constitutional allowances to use what force he did to arrest Cullen. He further contends that what force he did use was far less than the deadly force he would have been justified in using to prevent Cullen's escape pursuant to *Tennesee v. Garner,* 471 U.S. 1, 11, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985).

The heart of this allegation is the type and amount of force used by Breen after Cullen was ordered to lean against the wall of Attorney Nolan's house. While this Court acknowledges that the police need some leeway in the use of force when apprehending armed and dangerous suspects, it, of course, does not condone the use of a service revolver to render unconcious or otherwise threaten an already handcuffed suspect, nor the beating of a suspect who is safely in custody.

Given that the force alleged by Cullen to have been used by Breen is unconstitutional, the question becomes whether the record contains any evidence supporting Cullen's claims.[6]

As stated in the facts, the record contains a copy of a medical bill from the Carney Hospital dated April 8, 1986. The bill states that Cullen's condition on February 5, 1983 was diagnosed as "Assaulted, Multiple Injuries." A reasonable inference could be drawn by a factfinder that such injuries could have resulted from Breen's alleged use of excessive force as described by Cullen.[7]

---

6. Cullen's claim that Breen arrested him "without probable cause" is totally without foundation in light of the record before the Court. Accordingly, summary judgment with respect to the claim of false arrest is granted on behalf of Breen.

7. Although there may be some argument as to this document's admissibility at trial, *Celotex* clearly states that a nonmoving party need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment." 477 U.S. at 324, 106 S.Ct. at 2553.

Furthermore, the only evidence put forth by Breen to controvert Cullen's allegations is the affidavit of Attorney Nolan. This affidavit states that Attorney Nolan "observed the Milton Police apprehend Francis E. Cullen, Jr. on the driveway in my property" and that "[n]one of the police officers were hitting Francis Cullen or using excessive force in apprehending him *at that time.*" Affidavit of Thomas J. Nolan at 1. The Court emphasizes the last three words because they indicate that Attorney Nolan did not observe the entire arrest. Specifically, he apparently did not observe what happened between Cullen and Breen before Cullen ended up in the driveway with Breen on his back because he said that he only observed police apprehend Cullen in his driveway. In addition, Attorney Nolan saw more police apprehend Cullen than just Breen. However, Breen stated in his affidavit that he was joined by more police officers only *after* he and Cullen allegedly tumbled into the driveway. Thus, what happened during the crucial period when Breen and Cullen were alone before Cullen was apprehended in the driveway remains in dispute. Accordingly, the affidavits submitted by Breen in support of his summary judgment motion clearly do not dispel the factual dispute forming the basis for Cullen's claims against Breen. The Court cannot state that Cullen will not prevail at trial as matter of law.[8]

For the reasons stated above, the Court concludes that Officer Breen has failed to satisfy his burden of production pursuant to the *Celotex* standard. Summary judgement as to this aspect of Cullen's claims against Breen must therefore be DENIED.

## VI. *State Tort Claims*

Although Breen's brief addressed only the federal constitutional claims against him, Cullen has also alleged state law claims. The Court rules that as to these state law claims there exist genuine issues of material fact for the same reasons as are applicable to the federal claims. Summary judgment is therefore DENIED Breen as to the state tort claims.

However, it is the settled rule in this Circuit that in a non-diversity case, where pendent state claims are joined with a federal cause of action and that federal cause of action is the subject of a successful summary judgment motion, the pendent state claims should be dismissed. *Bibbo v. Mulhern,* 621 F.Supp. 1018, 1031 (D.Mass. 1985) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 [1966]; *Clark v. Taylor,* 710 F.2d 4, 12 [1st Cir.1983]).

Accordingly, the Court rules that, because it has allowed the motions for summary judgment as to Mattaliano, MacDonald, and the Town of Milton with respect to the federal causes of action, the state law claims against these defendants are dismissed as beyond the Court's jurisdiction.

## VII. *Conclusion*

In accordance with the foregoing discussion, it is ORDERED:

1) The motions for summary judgment of Chief of Police Mattaliano, Lieutenant MacDonald, and the Town of Milton as to the federal claims will be ALLOWED, and the state claims against these defendants are dismissed.

2) The motion for summary judgment of Officer Breen is ALLOWED with respect to the claims that Cullen was arrested without probable cause, in bad faith, and with evil intent for an ulterior motive. In its remaining aspects, his motion for summary judgment is DENIED.

---

**8.** In the alternative, this Court has engaged in the factual evaluation of the circumstantial evidence bearing on the disputed issues as is arguably required by *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See* Collins, *Summary Judgment and Circumstantial Evidence,* 40 Stan. L.Rev. 491 (1988). Even having done so, upon this record, the inferences which Cullen would have this Court draw are not so implausible as to permit summary judgment to be granted in this aspect of his claim against Breen.