James W. DAVISON, et al., Plaintiffs,

v.

PUERTO RICO FIREFIGHTERS
CORPS, et al., Defendants.

No. CIV.05–1755(JAF).

United States District Court,
D. Puerto Rico.

Feb. 14, 2006.

34

Peter W. Miller, Stuart A. Weinstein–Bacal, Liana Colon–Valentin, Weinstein–Bacal & Associates, PSC, Old San Juan, PR, for Plaintiffs.

Francisco A. Ojeda–Diez, P. R. Department of Justice–Federal Litigation, Saulo A. Velez-Rios, Saulo Abad Velez Rios Law Office, San Juan, PR, for Defendants.

## OPINION AND ORDER

FUSTE, Chief Judge.

Plaintiffs, James W. Davison, his wife, Ana Victoria Davison, and their conjugal partnership (collectively "Plaintiffs"), bring this action under 42 U.S.C. § 1983 (2003 & Supp.2005), alleging violations of the Due Process and Equal Protection Clauses of the United States Constitution, U.S. Const. Amend V; U.S. Const. Amend XIV; the Fifth Amendment Takings Clause, U.S. Const. Amend V; and accompanying Commonwealth law claims, against Defendants,

the Puerto Rico Firefighters Corps; Germán Ocasio Morales, Fulana de Tal, and the conjugal partnership they form; the Belén Condominium Homeowners Association; the Belén Condominium Board of Directors; and Belén Condominium Administrator Víctor Rodríguez. *Docket Document Nos. 1, 34 (amended).* Plaintiffs seek monetary and injunctive relief. *Id.* Defendants have moved for dismissal for lack of subject matter jurisdiction. *Docket Document Nos. 16, 18, 19.* Plaintiffs oppose. *Docket Document No. 35.*

## I.

### *Factual and Procedural Summary*

As we must, we accept Plaintiffs' factual averments as true for purposes of this motion to dismiss. *Docket Document Nos. 1, 34 (amended); see Alternative Energy, Inc. v. St. Paul Fire & Marine Ins., Co.,* 267 F.3d 30, 33 (1st Cir.2001) (explaining that on motion to dismiss, the court must accept all allegations in the complaint as true and must construe "all reasonable inferences in favor of the plaintiffs").

The condominium that is the subject of this litigation is a thirteen-floor structure built in 1970 by the Edamorga Corporation. There are three penthouse apartments (hereinafter "PH–1," "PH–2," and "PH–3") on the condominium's thirteenth floor, and two fire escape doors, one of which is located on an open terrace. The terrace, and, therefore, the terrace fire door, is accessible to all thirteenth-floor tenants via a door in the elevator lobby, assuming that the door is left unlocked.

Atlantic Quality Construction Corporation (AQC), a company that worked with Edamorga on the condominium's construction, became the first owner of PH–1, PH–2, and PH–3 in 1972. In 1977, AQC sold PH–1 to Rafael Hernández Colón, a former Puerto Rico governor from the Popular Democratic Party.

On August 15, 1994, Plaintiffs, who were under the impression that the terrace formed part of PH–1, contracted to rent PH–1 from Hernández for six months. When the Plaintiffs entered the condominium lobby just hours after having signed the lease, Víctor Rodríguez, the condominium administrator, approached them and reminded them that the entire terrace was a common area.

The Plaintiffs, who were shocked, rushed back to Hernández, who assured them that Rodríguez was wrong and that the terrace was indeed part of PH–1 with one qualification: Residents of PH–2 and PH–3 had a "right of way" over the terrace to reach the fire escape stairs. Placated by Hernández' explanation, the Plaintiffs went ahead with the deal and moved into PH–1 on August 19, 1994. Plaintiffs renewed the lease with Hernández for a term of three to five months on January 27, 1995, and finally signed for another five-year lease term on April 19, 1995.

On May 22, 1996, AQC sent a letter to Plaintiffs,[1] who had been using the terrace as a living space and laundry area, informing them that the terrace was a common area from which they must remove their

---

**1.** Part of Plaintiffs' complaint alleges that Puerto Rico courts have illegally held Mrs. Davison accountable for not complying with court orders to which she was never a party. It does indeed appear that at times Mr. Davison has been the sole named subject of Puerto Rico legal proceedings and court orders pertaining to this controversy. Because the issues of Mr. and Mrs. Davison's allegedly improperly conflated identities does not factor into our subject matter jurisdiction analysis today, we will simply use the blanket term "Plaintiffs" for Mr. and Mrs. Davison throughout this factual summary so as not to make it more confusing and voluminous than it already is.

personal belongings immediately so as to permit other tenants' access to the fire escape access door. The Plaintiffs asked the Puerto Rico Firefighters Corps (PRFC), an administrative body whose obligations include the application of rules and regulations to prevent fires and fire-related injuries at multi-story residential buildings, to clarify whether that was true. The PRFC's first inspection of the premises on August 7, 1996, revealed a fire code violation—the elevator lobby door to the terrace was locked and the fire escape door, therefore, inaccessible. After a follow-up investigation on November 15, 1996, the PRFC designated the entire terrace a common area on December 17, 1996. Plaintiffs were instructed to remove their belongings from the terrace and provide key-free access thereto, or be fined $10,000 a day. A surveyor hired by the Plaintiffs determined that the regulatory conversion of the terrace to a common area would reduce PH–1's area by 7%.

Upset, Plaintiffs demanded that Hernández return all of the money that they had paid for the five-year lease dated April 19, 1995, and that he pay damages. Hernández responded by filing suit in a local trial court seeking a declaratory judgment as to the continuing validity of the five-year lease.

While that lawsuit was pending, and upon Hernández and Plaintiffs' requests, the PRFC convened additional hearings on February 11, 1997, and April 16, 1997, on the issue of whether the terrace was a common area. The PRFC's then-Fire Chief, Germán Ocasio Morales, issued a resolution and order on September 18, 1997, mandating an unobstructed fire escape access corridor thirty-six inches wide along the shortest path between the door from the thirteenth floor elevator lobby and the terrace fire door. The "shortest path" corridor, according to Plaintiffs,

would have halved the terrace by cutting diagonally across it.

On May 14, 1998, the local trial court ruled in Hernández' favor that the five-year lease remained valid. The trial court also ruled that while the terrace was, generally speaking, a part of PH–1, it was subject to a three-foot wide fire escape access corridor. The court suggested that the fire escape access corridor could follow the terrace's perimeter, rather than bifurcating the terrace as the PRFC's "shortest path" ruling would require.

Subsequent to the court ruling, Plaintiffs and Hernández began to dispute over who would pay for compliance with the May 14, 1998, court order, i.e., who should be responsible for constructing the fire escape access corridor on the terrace. As a result, no compliance action whatsoever appears to have been taken on the order throughout 1998 and 1999. On November 1, 1999, the PRFC reaffirmed its September 18, 1997, "shortest path" ruling and fined Plaintiffs and Hernández $2,000 each for failing to comply, warning them that more fines were in store if they continued to shirk their responsibilities under the fire code and the PRFC's interpretive rulings thereof.

On January 24, 2000, Plaintiffs, Hernández, and representatives of the Belén Condominium Board of Directors met to discuss how and when Plaintiffs and Hernández would see fit to comply with the PRFC's fire door escape orders. At the meeting, the Board of Directors' representatives indicated for the first time their preference that the fire escape access corridor be five feet wide rather than the three feet stipulated by the PRFC in its September 18, 1997, directive.

On May 10, 2000, the PRFC replaced its September 18, 1997, and November 1, 1999, directives with a new directive, mandating that: (1) the fire door access corri-

dor should be five-feet wide, not three-feet wide; and (2) the corridor should be blocked off from the rest of PH–1's terrace by a nine-foot Plycem wall.

On June 15, 2000, Plaintiffs bought PH–1 from Hernández.

Unsatisfied with the May 10, 2000, PRFC order, Plaintiffs filed a motion on October 5, 2000, requesting amendment. The PRFC relented and on December 29, 2000, reinstated the prior orders pursuant to which a three-foot corridor was required but no nine-foot Plycem wall.

Belén Condominium's Board of Directors asked the PRFC to reconsider its rescission of the May 10, 2000, order and on March 1, 2001, the PRFC reinstated it, once again requiring the five-foot fire escape access corridor and the nine-foot Plycem wall.

On May 3, 2001, Plaintiffs appealed the PRFC's March 1, 2001, reinstatement of the May 10, 2000, order to the Puerto Rico Court of Appeals. On September 21, 2001, the appeals court held that Plaintiffs' appeal was untimely and let the May 10, 2000, order stand. Plaintiffs asked the appeals court to reconsider, but on October 25, 2001, the court affirmed its September 21, 2001, decision.

Plaintiffs took no action over the following year to comply with the May 10, 2000, order. One year later, on October 15, 2002, the Solicitor General of Puerto Rico asked a local trial court to order Plaintiffs to comply. Plaintiffs responded by challenging the appeals court's previous affirmation of the May 10, 2000, order. The trial court refused to hear Plaintiffs' challenge, citing res judicata. On March 1, 2004, Plaintiffs appealed to the Puerto Rico Court of Appeals, and on July 30, 2004, the court also denied their petition. On September 13, 2004, Plaintiffs filed a writ of certiorari before the Puerto Rico

Supreme Court, and on December 10, 2004, the Supreme Court also denied the petition. On January 28, 2005, Plaintiffs asked the Supreme Court to reconsider, and it quickly denied Plaintiffs' request later that same day.

On May 17, 2005, the local trial court scheduled a contempt hearing to consider whether to hold Plaintiffs in contempt for their continuing failure to comply with the May 10, 2000, order. On June 2, 2005, the eve of the contempt hearing, the Plaintiffs filed an application for a construction permit to begin the work.

On June 3, 2005, the local trial court held the Plaintiffs in contempt for having ignored the PRFC's May 10, 2000, order. In a follow-up hearing on June 6, 2005, the court advised Plaintiffs that unless they commenced the construction ordered by the May 10, 2000, order by June 13, 2005, they would each be incarcerated for thirty days. Although the construction permit had not yet been issued, Plaintiffs began some of the work necessary to comply with the May 10, 2000, order on June 12, 2005.

Plaintiffs filed this complaint on July 8, 2005, *Docket Document No. 1,* and amended it on August 15, 2005, *Docket Document No. 34,* requesting monetary and injunctive relief for the Defendants' alleged violations of (1) the Equal Protection and Due Process Clauses of the U.S. Constitution as protected by 42 U.S.C. § 1983; (2) the Fifth Amendment Takings Clause; and (3) "public policy," Puerto Rico Fire Code, Puerto Rico adverse prescription law, Puerto Rico servitudes law, and various other state laws. Plaintiffs' primary complaint is that the creation of the five-foot fire escape access corridor would reduce the size of their apartment from 3,905 square feet to 3,841 square feet, and second, that the erection of the nine-foot Plycem wall would eliminate the view and ventilation that they currently enjoy from

the terrace. According to the Plaintiffs, these unconstitutionally and illegally required changes will not only cost them considerable money to implement, but will reduce their enjoyment of the apartment, as well as its market value by approximately $100,000.

On August 1, 2005, Defendants PRFC and Ocasio urged this court to dismiss the Plaintiffs' complaint for lack of subject matter jurisdiction. *Docket Document No. 16.* On the same day, Defendants Belén Condominium Homeowners Association, Belén Condominium Board of Directors, and Rodríguez also filed a motion to dismiss the Plaintiffs' complaint for lack of subject matter jurisdiction. *Docket Document No. 18.* Plaintiffs filed an opposition to the dismissal requests on August 16, 2005. *Docket Document No. 35.*

## II.

### Legal Standards

■ Under Rule 12(b)(1), a defendant may move to dismiss an action against her for lack of federal subject matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1) (1992 & Supp.2004). Since federal courts are courts of limited jurisdiction, the party asserting jurisdiction has the burden of demonstrating the existence of it. *See Murphy v. United States,* 45 F.3d 520, 522 (1st Cir.1995) (citation omitted). In assessing a motion to dismiss for lack of subject matter jurisdiction, a district court "must construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiffs." *Viqueira v. First Bank,* 140 F.3d 12, 16 (1st Cir.1998) (citing *Royal v. Leading Edge Prods., Inc.,* 833 F.2d 1, 1 (1st Cir.1987)). Additionally, a court may review any evidence, including submitted affidavits and depositions, to resolve factual disputes bearing upon the existence of jurisdiction. *See Land v. Dollar,* 330 U.S. 731, 734–35, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Aversa v. United States,* 99 F.3d 1200, 1210 (1st Cir.1996) (citation omitted).

## III.

### Analysis

#### A. Section 1983 Equal Protection claim

■ Defendants argue that this court does not have subject matter jurisdiction over the § 1983 equal protection claim in this complaint because a federal district court cannot review final judgments entered in a state court. *Docket Document Nos. 16, 18.* Defendants argue that Plaintiffs' Fourteenth Amendment Equal Protection claim [2] amounts to nothing more than an attempt to promote the review and reversal of the May 10, 2000, fire escape access order that has already been fully considered, and affirmed, by the Puerto Rico judiciary. U.S. CONST. AMEND XIV; *Docket Document Nos. 16, 18.*

---

**2.** Plaintiffs' Equal Protection claim alleges that PRFC and Ocasio have unconstitutionally applied and enforced the fire code more forcefully against the Plaintiffs than against similarly situated citizens. *Docket Document No. 1.* Because Plaintiffs' complaint indicates that PH–1's previous owner Hernández was the former Governor of Puerto Rico from the Popular Democratic Party, and that the controversy began when the New Progressive Party controlled Puerto Rico's executive branch of government, we surmise that Plaintiffs' equal protection allegation is meant as a charge of political discrimination. *Id.*

If that is true, then the nature of the allegation becomes somewhat confusing when the Plaintiffs later state that the Popular Democratic Party was back in control of the government when the hotly debated May 10, 2000, order was reiterated by the PRFC on March 1, 2001. *Id.* Hernández had not yet transferred title of PH–1 to Plaintiffs at that time. *Id.*

Plaintiffs aver that their equal protection claim raises a new question that does not impermissibly require review of a final Commonwealth judgment. *Docket Document No. 35.*

■ In *Rooker v. Fidelity Trust Co.*, the Supreme Court held that plaintiffs cannot bring constitutional questions to United States District Courts to reverse or modify state-court judgments against them. 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923). The Court later clarified this important check on federal subject matter jurisdiction in *District of Columbia Court of Appeals v. Feldman:* "If the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial in a judicial proceeding ... then the District Court is in essence being called upon to review the state court decision. This the District Court may not do." 460 U.S. 462, 483 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *See also Wilson v. Shumway*, 264 F.3d 120, 126 (1st Cir.2001) (holding that the *Rooker/Feldman* doctrine is applicable to cases brought under § 1983). A federal constitutional challenge is "inextricably intertwined" with a state-court judgment, and therefore without subject matter jurisdiction, "[w]here federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Pennzoil Co.*

*v. Texaco, Inc.*, 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987).

Plaintiffs request that we find an equal protection violation in the government's efforts to secure the PRFC's May 10, 2000, order. We would not be able to find a constitutional defect without ruling that Puerto Rico's court system was wrong in repeatedly affirming the order's validity. *See Rosenfeld v. Egy*, 346 F.3d 11, 19 (1st Cir.2003) (commenting that the constitutional claims were "inextricably intertwined" with the state-court judgment because plaintiff would have never raised them had the contested order never been issued). Plaintiffs' own application for preliminary and permanent injunctive relief concedes this point, and perfectly captures the jurisdictional problem in this case, when it asks us to enjoin future enforcement of the fire escape access order *"irrespective of the various decisions of the local courts upholding [it]." Docket Document No. 4.* Principles of comity and respect for the Puerto Rico courts' ability to handle their own dockets are such that we cannot review the conclusive adjudications they have made and we, therefore, dismiss the Plaintiffs' § 1983 equal protection claim for lack of subject matter jurisdiction.[3] Even though it is not especially clear from the Plaintiffs' filings whether they raised an equal protection claim in the Puerto Rico courts vel non, the answer to that question is irrelevant to our conclusion. *Mangan v. Davis*, 84 Fed.Appx. 104

3. The only proper federal appellate venue for an allegedly unconstitutional or unlawful state court ruling against a citizen in an individual controversy is the United States Supreme Court. *Feldman*, 460 U.S. at 485–85, 103 S.Ct. 1303 (collecting circuit court cases drawing a distinction between general constitutional challenges to state law—which can be filed before a United States District Court—and claims that a state court has unlawfully ruled against a citizen in an individual controversy—which can only be filed before the United States Supreme Court); 28 U.S.C. § 1258 ("Final judgments or decrees rendered by the Supreme Court of the Commonwealth of Puerto Rico may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of the Commonwealth of Puerto Rico is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States....").

(1st Cir.2003) (holding that it does not matter to the "inextricably intertwined" analysis whether plaintiff raised the federal constitutional claim in the state court proceedings.)

■ Plaintiffs imply that the *Rooker/Feldman* doctrine is inapposite in this case because of an exception to the rule holding that United States District Courts always have subject matter jurisdiction over general constitutional challenges over state laws. *Docket Document No. 35; Feldman*, 460 U.S. at 487, 103 S.Ct. 1303 (holding that United States District Court has subject matter jurisdiction over that part of a plaintiff's complaint that is a general attack on constitutionality of a state law not requiring review of a state judicial decision in a particular case). The exception Plaintiffs are trying to invoke does not apply to the present case, given that they are not challenging the constitutionality of the fire code as a whole, but rather are challenging the fire code as it has been applied in this one particular instance against them. *Docket Document Nos. 1, 34.*

**B. Section 1983 Due Process and Takings Clause claim**

■ Plaintiffs' § 1983 due process claim alleges that PRFC and Ocasio infringed upon Plaintiffs' Fifth Amendment "liberty interest in living [in PH–1]." *Docket Document No. 1.* We take Plaintiffs to mean either that PRFC and Ocasio allegedly violated Plaintiffs' due process rights: (1)

by failing to provide just compensation for a regulatory taking, or (2) by merely issuing the May 10, 2000, order, which Plaintiffs call "arbitrary and capricious." *Docket Document No. 35.* We will proceed as if Plaintiffs have pleaded both variations on a due process claim.

**1. Rooker/Feldman doctrine and the "arbitrary and capricious" § 1983 due process claim**

If premised on "arbitrary and capricious" government action, the § 1983 due process action must be dismissed pursuant to the *Rooker/Feldman* doctrine. As discussed in section A, supra, Plaintiffs cannot turn to a United States District Court for appellate review when they think Puerto Rico courts have issued irrational or unconstitutional rulings against them. Such case-specific review in the context of a constitutional challenge could only be brought before the United States Supreme Court. *See* section A n. 2, supra.

**2. Ripeness doctrine and the just compensation § 1983 due process claim**

■ Supposing Plaintiffs instead meant that they were denied due process because they were not compensated for the seizure of the fire escape access corridor on their terrace,[4] the applicability of the *Rooker/Feldman* doctrine becomes less clear because the takings inquiry would not require us to question the existence or the parameters of the May 10, 2000, order, but

4. The Fifth Amendment's Takings Clause, which has been applied to the States and Puerto Rico through the Fourteenth Amendment, provides that private property shall not "be taken for public use, without just compensation." U.S.C.A. Const. Amend. V; *Alicea v. Caban*, 181 F.3d 79 n. 3, 1999 WL 525912 (1st Cir.1999) (holding that the Fifth Amendment applies to Puerto Rico by operation of the Fourteenth Amendment). In addition to guaranteeing compensation for the "direct government appropriation or physical invasion of private property," the Takings Clause has also been interpreted to compensate property owners who suffer particularly onerous government regulation of property. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 125 S.Ct. 2074, 2081, 161 L.Ed.2d 876 (2005) (citations omitted).

only to analyze what compensation, if any, the standing order triggers for the Plaintiffs under the Constitution. Because neither party briefs how the *Rooker/Feldman* doctrine applies in the specific context of Takings Clause challenge, we decline to decide the jurisdictional question based on that doctrine and, instead, turn to an analysis of the federal takings claim's ripeness.

■ Just as there is a federal mechanism by which property owners can challenge regulatory takings effectuated without compensation, so too, is there a homologue in the Puerto Rico system. The Puerto Rico Supreme Court made its first mention of "inverse condemnation" actions in *Heftler Int'l, Inc. v. Junta de Planificación*, 99 D.P.R. 467, 473 (1970), saying that property owners could use such an action to "force the State to comply with the constitutional provisions guaranteeing that no person shall be deprived of his property without due process of law and without having received compensation." *See also E.L.A. v. Northwestern Const., Inc.*, 103 D.P.R. 377 at *4, 1975 WL 38849 (1975) (explaining that "inverse" condemnation actions are so-named because they are initiated by the property owner, not by the government) (translation ours). Inverse condemnation actions in Puerto Rico are governed by the same norms and principles as condemnation actions brought directly by the Puerto Rico government. *Olivero v. Autoridad de Carreteras*, 1978 WL 48858 at *4 (P.R.1978).

Given that Puerto Rico has adequate procedure in place through which the Plaintiffs can seek just compensation, it is this local process that should have been the Plaintiffs' first resort with respect to their takings challenge. *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) ("[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation."); *Garay–Medina v. P.R. Highway and Transp. Auth.*, 2005 WL 1641257 at *2 (D.P.R. July 8, 2005) ("Before filing a lawsuit alleging an unlawful or uncompensated taking, a plaintiff is bound first to pursue the state inverse condemnation remedy provided by Puerto Rico law."). Because neither Plaintiffs' complaint nor the court record indicate that the Plaintiffs have pursued this remedy under Puerto Rico law, their § 1983 takings claim is premature and unripe for adjudication before a United States District Court. *Williamson County*, 473 U.S. at 195, 105 S.Ct. 3108; *Culebras Enter. Corp. v. Rivera Rios*, 813 F.2d 506, 513 (1st Cir.1987) (Plaintiffs must first pursue the Commonwealth's inverse condemnation remedy before they can bring a federal damages claim since, "when fleshed out by the local court, that remedy could well provide the 'certain and adequate' relief" it seeks.).[5] We, therefore, dismiss it for lack of subject matter jurisdiction.

---

**5.** It is worth mentioning, lest there be any later confusion, that Plaintiffs will not be able to litigate their federal takings claims in United States District Court if they raise them before Puerto Rico courts at the same time they pursue their local remedy. *San Remo Hotel, L.P. v. City and County of San Francisco, CA*, ── U.S. ──, 125 S.Ct. 2491, 162 L.Ed.2d 315 (2005). While it may seem unfair to give preclusive effect to Puerto Rico

proceedings when the *Williamson County* rule requires them to ripen the federal takings claim, res judicata over the federal takings claims is not a foregone conclusion: Plaintiffs are not required to invoke claims that are particular to federal takings jurisprudence in Puerto Rico court—they are only required to exhaust their local claims. If they take care to make that distinction in Puerto Rico court they can preserve federal district court juris-

 Apart from their § 1983 Due Process claim, which as we have just established implicates the Takings Clause and must be dismissed as unripe, Plaintiffs have also invoked the Takings Clause directly to ask this court to issue a mandamus ordering the PRFC to convene a just compensation hearing. This portion of Plaintiffs' complaint is also dismissed for unripeness for the same reasons as the § 1983 due process claim.

## C.  *Supplemental claims*

Because all of Plaintiffs' federal claims have been dismissed, we decline to exercise supplemental jurisdiction over their associated Commonwealth claims.[6] *Rivera v. Murphy,* 979 F.2d 259, 264 (1st Cir. 1992) (quoting *Cullen v. Mattaliano,* 690 F.Supp. 93 (D.Mass.1988) ("[I]t is the settled rule in this Circuit that in a non-diversity case, where pendent state claims are joined with a federal cause of action and that the federal cause of action is [dismissed] . . . the pendent state claims should be dismissed.")).

## IV.

### *Conclusion*

In accordance with the foregoing, we **GRANT** Defendants' motion to dismiss Plaintiffs' complaint in its entirety for lack of subject matter jurisdiction. *Docket Documents No. 16, 18, 19.*

**IT IS SO ORDERED.**

diction over federal takings claims. In any event, few plaintiffs bother to make that distinction, and the Supreme Court has noted that for that reason "there is scant precedent for the litigation in federal district court of claims that a state agency has taken property in violation of the Fifth Amendment's takings clause". *Id.* at 2506.

6.  Plaintiffs' complaint includes a claim that the local trial court's June 6, 2005, Incarceration Order violates "public policy" by ordering Plaintiffs to comply with the May 10, 2000, order without making allowances for the fact that the Plaintiffs have not, in the five-plus years since the order's original issuance, secured the necessary construction permits to do the work. *Docket Document No. 1.* Although the party asserting jurisdiction has the burden of demonstrating its existence, *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001), Plaintiffs do not explain how their public policy argument vests a United States District Court with subject matter jurisdiction over the controversy. We, therefore, treat the vague public policy argument as a state claim for the final jurisdictional inquiry.