(October 11, 1990)

■ CARNEGIE SUCCESSORS, INC., Respondent, v FRANCES

Gross et al., Respondents. (Action No. 1.) Brenton, Ltd., Appellant, v Hudes Family Irrevocable Trust No. 2 et al., Respondents. (Action No. 2.)—Order, Supreme Court, New York County (C. Beauchamp Ciparick, J.), entered on or about June 19, 1989, which, *inter alia,* dismissed the complaint, is modified, on the law, to grant plaintiff summary judgment on its first cause of action for specific performance, to reinstate plaintiff's fifth cause of action for an abatement in the purchase price, and to dismiss all of defendants' affirmative defenses and counterclaims, and is otherwise affirmed without costs, and the judgment of the same court, entered October 19, 1989 pursuant to said order, is vacated, without costs.

We assume in defendant seller's favor that payment of the second installment on the down payment was due no later than November 14, 1988, and that plaintiff buyer's tender of a check on that date drawn on insufficient funds was an event of default under the parties' contract. (We should note that buyer submitted compelling evidence on this motion for summary judgment that it was only because of a clerical error on the part of its bank that its check did not clear; buyer's retender of the check immediately upon being advised of such by seller was refused.) Nevertheless, we hold that seller was not then entitled to repudiate the contract because, also under the contract, buyer was entitled to 10 days' written notice of any default, which seller never gave. Concerning this requirement of notice of default, which we construe as a 10-day opportunity to cure, seller's only argument is that because of buyer's failure to tender a good check on the date payment of the second installment was due, the contract the parties signed on October 21, 1988, including the requirement of notice of default, never came into effect—in other words, that the requirement of notice of default, which is set forth in paragraph 4 of the contract entitled "Earnest Money", was not to apply to a default in payment of the earnest money but only to defaults occurring after the earnest money had been paid in full. We reject this argument that the contract never came into effect for two reasons. First, it is inconsistent with seller's retention of the first installation of the down payment as liquidated damages, indicating a practical construction of the contract as being fully in effect upon payment of the first installment. Second, and more important, seller's argument that the requirement of notice did not apply to a default in the payment of earnest money is inconsistent with the language of the contract itself, which in terms applies to "any default on the part of the Purchaser" with no exception made

for nonpayment of the second installment of the earnest money.

Under paragraph 4, buyer was required to make a down payment of $125,000 in two installments—$25,000 upon the signing of the contract, and $100,000 "delivered by check to the escrowee to be deposited after the waiver or determination of the right of first refusal by [the tenant]." Although this language could be construed as having required buyer to deliver a check for $100,000 upon the signing of the contract for deposit by the escrowee upon the escrowee's determination that the tenant had waived its right of first refusal, the parties obviously construed it otherwise, since no demand was made by seller that buyer deliver a check for $100,000 at the contract signing. We therefore reject the premise underlying seller's argument that buyer was obligated to have the $100,000 "in place" immediately upon being orally advised by seller that the tenant had waived its right of first refusal; such an understanding, contemplating as it does payment immediately upon the tenant's waiver of its right of first refusal, would more likely have been implemented by a delivery of a check for the second $100,000 installment at the contract signing. Instead, in accordance with paragraph 10 of the contract requiring that "[a]ll notices and demands shall be in writing", we construe paragraph 4 as having required seller to give buyer written notice of the tenant's waiver, with a reasonable period of time fixed in such notice for payment of the second installment, reasonableness to be measured against the December 15, 1988 time-of-the-essence closing date. A failure by buyer to make the payment within the time fixed in such notice would then have triggered the 10-day cure provision. Concur—Sullivan, Carro and Wallach, JJ.

Murphy, P. J., and Rubin, J., dissent in a memorandum by Murphy, P. J., as follows: We dissent and would affirm.

The contract which plaintiff seeks to enforce required payment into an escrow account of $125,000 earnest money to be paid as follows: $25,000 upon signing of the agreement and $100,000 "to be deposited after the waiver or determination of the right of first refusal by Carnegie Successors, Inc. and/or Rowab Enterprises, Inc., or its assignee."

On November 8, 1988, plaintiff was notified that Carnegie Successors had waived its right of first refusal, and demand was made for the additional $100,000. Again, on November 11, 1988 and on November 14, 1988, defendants demanded payment of the remaining $100,000 of the earnest money. On the

third demand defendant advised that if the payment was not received by 10:00 P.M., another offer would be accepted. On November 14, 1988, plaintiff-appellant Brenton, Ltd., the purchaser under a contract dated October 21, 1988, tendered a check to defendants which was dishonored by Chemical Bank for insufficient funds.

On November 23, 1988 counsel for defendants advised Brenton that the check was returned, that the failure to pay the $100,000 constituted a willful default, and that the $25,000 partial down payment was forfeited.

The property then was sold to Carnegie Successors which reconsidered its waiver of its first refusal right, on terms similar to the contract with Brenton.

We agree with the motion court that the failure to pay the $100,000 constituted a material breach of the contract, giving defendants the right to rescind. *(Grace v Nappa,* 46 NY2d 560.)

While it is true that payment by check constitutes only a conditional payment (UCC 2-511), and equity might require redeposit of a returned check under some circumstances, on this record defendants were entitled to rescind the contract. Defendants made payment by 10:00 P.M. of the essence of the contract. Brenton failed to perform. On these facts, no equitable duty existed to redeposit the check.

Accordingly, the judgment of the Supreme Court, New York County (Carmen Beauchamp Ciparick, J.), entered on October 19, 1989, which dismissed the complaint, should be affirmed.