SWEETSER, Plaintiff

v.

**NETSMART TECHNOLOGIES, INC., Defendants.**

**Civil No. 07–202–P–S.**

United States District Court, D. Maine.

May 27, 2008.

Jeffrey W. Peters, Preti, Flaherty, Beliveau, Pachios & Haley, LLP, Portland, ME, for Plaintiff.

Adam M. Bialek, Frederick R. Kessler, Wollmuth Maher & Deutsch LLP, New York, NY, Jerrol A. Crouter, Drummond, Woodsum & MacMahon, Portland, ME, for Defendants.

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS

GEORGE Z. SINGAL, Chief Judge.

Plaintiff Sweetser has brought a four-count Complaint against Defendant Netsmart alleging breach of contract (Count I), breach of express warranties (Count II), unjust enrichment (Count III) and negligence (Count IV). Now before the Court is Netsmart's Motion to Dismiss seeking dismissal of all counts pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6). Sweetser opposes dismissal of its breach of contract and breach of warranties claims, but agrees to the dismissal of the unjust enrichment and negligence claims. Therefore, the discussion below will only address Plaintiff's claims for breach of contract and breach of express warranty.

### I. Applicable Legal Standard

Netsmart's Motion to Dismiss invokes Rules 12(b)(1) and 12(b)(6). When a defendant moves to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists. *Lundquist v. Precision Valley Aviation, Inc.,* 946 F.2d 8, 10 (1st Cir.1991); *Lord v. Casco Bay Weekly, Inc.,* 789 F.Supp. 32, 33 (D.Me.1992). Both parties may rely on extra-pleading materials. 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 at 213 (2d ed.1990); *see also Hawes v. Club Ecuestre El Comandante,* 598 F.2d 698, 699 (1st Cir.1979) (question of jurisdiction decided on basis of answers to interrogatories, deposition statements and an affidavit).

"In ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001). With respect to a Rule 12(b)(6) motions, the Supreme Court recently has clarified:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atlantic Corp. v. Twombly,* —— U.S. ——, —— —— ——, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007) (citations omitted). Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alternative Energy,* 267 F.3d at 33. "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (citation and internal quotation marks omitted). In this case, the contract that the parties entered into was attached to the Complaint and both parties rely on its terms in the briefing of the Motion to Dismiss.

### II. Factual Background

The Complaint includes the following relevant factual allegations. Sweetser is a

Maine non-profit corporation with its principal place of business located in Saco, Maine. Sweetser provides comprehensive mental health services for children, adults, and families in Maine. Sweetser offers services that address emotional disturbances, mental illnesses, behavioral disorders, and learning disabilities through a network of educational programs, preventive services, community-support services, residential homes, and outpatient services. Sweetser relies on its computer systems and associated software to provide efficient and effective support services to its clients. Netsmart is a Delaware corporation with a principal place of business located in Islip, New York, which supplies enterprise-wide software systems and related services to health and human services providers.

Sweetser solicited bids to upgrade its computer hardware and software systems through a Request–for–Proposal ("RFP") process. Sweetser intended these upgrades to help it improve its operations, level of services to its clients and provide more services to the communities it serves. Netsmart responded to Sweetser's RFP and the parties entered into discussions regarding Sweetser's needs and expectations for the system. During the RFP process, Sweetser specifically provided Netsmart with all billing requirements for the software. These same requirements were contained within the RFP and were subsequently discussed extensively with Netsmart. Netsmart represented to Sweetser that its product would meet all requirements stated in the RFP and as discussed with Sweetser.

In September 2005, Sweetser and Creative Socio–Medics Corp. ("CSM") d/b/a Netsmart entered into and executed an Agreement.[1] Pursuant to the terms of the Agreement, in exchange for Sweetser's total payment of $1,405,704, Netsmart was required to, among other things:

a. grant Sweetser "a non-exclusive, perpetual[,] non-transferable license" to software and related hardware that was to be specially developed and designed for Sweetser's purposes and usage (the "software and hardware");

b. install and implement the software and hardware on and into Sweetser's computer systems and operations;

c. provide Sweetser with training and continued learning services relating to the software and hardware;

d. deliver the software and hardware and certify that it was ready for testing; and

e. test the software and hardware in support of an acceptance process.

Pursuant to the Agreement, Netsmart expressly warranted to Sweetser that (a) the software and hardware would substantially conform in all material respects with its prescribed specifications and (b) it would correct all problems or defects in the software or hardware in a reasonably prompt fashion. Pursuant to the terms of the Agreement, Netsmart was to commence implementation of the software and hardware in October 2005. Sweetser alleges that Netsmart failed to deliver on its contractual promises relating to the functionality, performance and installation of its software and hardware as well as training on the same. For instance, after the contract was signed, Sweetser was informed that it was either not able to get certain requirements at all due to the way Netsmart's core system was built, or it

---

1. CSM is a former wholly-owned subsidiary of Netsmart. CSM is now a division of Netsmart or otherwise d/b/a Netsmart

was only able to obtain needed functionality at additional expense.

Sweetser promptly informed Netsmart of all implementation problems and deficiencies. Netsmart assured Sweetser that it would address and correct all problems and deficiencies with the software and hardware. Netsmart never successfully addressed or resolved the functionality problems with the software and hardware. As all of the problems and difficulties continued to accumulate, Sweetser asked Netsmart to replace the original project manager responsible for overseeing the various tasks and phases to be completed under the Agreement. Netsmart replaced the original project manager. However, ultimately, Netsmart failed to provide Sweetser with responses to important, time-critical requests.

In an effort to resolve its issues and concerns with Netsmart, particularly the billing module, Sweetser offered an alternative to Netsmart. In particular, Sweetser proposed that rather than customizing the Netsmart system for what appeared to be a high cost and a long term process, Sweetser would use Netsmart's clinical module in tandem with its PsychConsult billing system. Netsmart refused to consider a "bidirectional interface" which would allow this alternative. Based upon Netsmart's continuing failure to fulfill its obligations under the Agreement and its failure to cure many known defects in the functionality of the software and hardware, in March 2007, Sweetser concluded that Netsmart had breached the Agreement. At that time, Sweetser had already paid Netsmart $1,252,222. Thereafter, Sweetser contracted with Askesis for products and services to take the place of those due from Netsmart under the Agreement.

## III. Discussion

The claims at issue in the Motion to Dismiss center on the Agreement entered into by the parties. (See Compl. ¶¶ 53–55 (breach of contract) & ¶¶ 58–59 (breach of warranty)). The agreement in this case provides, and the parties do not dispute, that New York law governs this action. Agreement ¶ 17(a); *see also LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 n. 7 (2d Cir.2005) ("'New York law gives full effect to parties' choice-of-law provisions.'" (quoting *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir.1996))).

### A. Lack of Subject Matter Jurisdiction

■ Netsmart argues that the Court lacks subject matter jurisdiction and thus the breach claims should be dismissed. Specifically, Defendant asserts that because Plaintiff's Complaint fails to allege it gave written notice of default and an opportunity to cure as required under the termination provision of the contract, the claims are not ripe for adjudication. Sweetser responds stating that a breach of contract cause of action accrues at the time of the breach. *See Ely–Cruikshank Co., Inc. v. Bank of Montreal*, 81 N.Y.2d 399, 599 N.Y.S.2d 501, 615 N.E.2d 985, 986 (1993); *see also Argonaut Partnership, L.P. v. Bankers Trustee Co., Ltd.*, 1997 WL 45521 at *5 (S.D.N.Y.1997) ("A breach of contract case ... is ripe immediately upon the breach...."). Thus, Sweetser contends the Complaint's specific allegations of Netsmart's failure to perform as required under the contract constitute a breach of contract and breach of express warranties that are ripe for adjudication.

■ The ripeness doctrine aims "'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *McInnis–Misenor v. Maine Medical Center*, 319 F.3d 63, 70 (1st Cir.2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148,

87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). In addition, the ripeness doctrine seeks to avoid putting courts in the position of " 'deciding issues in a context not sufficiently concrete to allow for focus and intelligent analysis, but it also can involve them in deciding issues unnecessarily, wasting time and effort.' " *City of Fall River v. F.E.R.C.,* 507 F.3d 1, 6 (1st Cir.2007)(internal quotations omitted).

Although the Complaint states in general terms that Sweetser gave Netsmart notice and an opportunity to cure the alleged breaches, Netsmart is correct that the Complaint does not state that Sweetser provided Netsmart with the appropriate notice of default and an adequate opportunity to cure prior to effectively terminating the Agreement. It does not follow, however, that Sweetser's claims for breach are not ripe. Netsmart argues that the procedural provisions of sections 12 and 17(b) constitute conditions precedent to asserting a claim for breach. Paragraph 12 of the Agreement is entitled "TERMINATION FOR DEFAULT" and provides as follows:

> If either party is in default of any of its material obligations hereunder, and has not commenced cure within ten (10) days and effected cure within thirty (30) days of receipt of written notice of default from the other party ("non defaulting party"), then the non-defaulting party may terminate the Agreement on written notice to the defaulting party.

*Id.* Paragraph 17(d) specifies the exclusive procedure by which notice may issue:

> Any notices required ... to be sent hereunder shall be in writing and shall be sent, Certified or Registered Mail, Return Receipt Requested, or by a recognized international courier. Notices shall be sent to the addresses first set forth above or to such other address as a party may designate by notice pursu-

ant hereto. Notices to CSM shall be sent "Attention: Chief Executive Officer". Notices shall be effective upon the date when delivery is either effected or refused.

*Id.* ¶ 17(d). Section 12 only addresses termination and the Agreement does not provide that a party must terminate before seeking any legal remedies for default or breach. Therefore, the lack of written notice does not preclude the nonbreaching party from recovering damages for the breaches; it simply means the nonbreaching party has not properly terminated the agreement.

■ Netsmart has not cited any precedent for the conditioning of a party's right to sue for breach on providing notice of termination as required by the terms of a contract. Indeed, under New York law, a party's failure to comply with a condition precedent may bar that party from asserting breach of contract. *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.,* 865 F.2d 513, 518 (2d Cir.1989) (failure to give contractually-secured opportunity to cure constituted fatal defect of contract termination); *Holland Industries, Inc. v. Adamar of New Jersey, Inc.,* 550 F.Supp. 646, 648–49 (S.D.N.Y.1982). In this case, however, Netsmart does not argue that the provisions of the contract upon which Sweetser bases its claims for breach of contract and breach of warranties require the satisfaction of any conditions. The conditions precedent that Sweetser has allegedly failed to satisfy—written notice sent by Certified, Registered or Return Receipt Requested mail to the Chief Executive Officer and opportunity to cure—relate only to the termination provision of the contract, and do not affect damage actions brought under the contract as a whole. Plaintiff is not suing for termination; rather, it sues for damages al-

legedly caused by Netsmart's breach of duties and warranties under the contract.

Moreover, the Agreement does not condition the remedies available for breach on compliance with the termination provision in section 12. Section 17(i) of the "GENERAL PROVISIONS" provides: "It is specifically agreed that the breach of this Agreement, . . . will result in irreparable injury and the party who claims such a breach shall be entitled to specific performance and injunctive relief to correct and enjoin such breach in addition to all other remedies which might be available." Thus, the plain language of the agreement demonstrates that notice is not a prerequisite to bringing an action, or receiving damages, for breach.

■■■ The elements of a breach of contract claim under New York law are: (1) the existence of a contract; (2) performance by the party seeking recovery; (3) non-performance by the other party; and (4) damages attributable to the breach. *Sauer v. Xerox Corp.,* 95 F.Supp.2d 125, 128 (W.D.N.Y.2000); *Marks v. New York Univ.,* 61 F.Supp.2d 81, 88 (S.D.N.Y.1999); *Air Support Int'l, Inc. v. Atlas Air, Inc.,* 54 F.Supp.2d 158, 165 (E.D.N.Y.1999). Here, the Complaint provides, and the parties agree, that Sweetser and Netsmart entered into an agreement to provide whereby Netsmart was to provide computer hardware and software systems to Sweetser. Sweetser alleges that it paid $1,252,222 to secure Netsmart's performance under the agreement. The Complaint further provides that Netsmart failed to provide Sweetser with the products and services agreed to in the contract and that Sweetser sustained damages as a result of having to hire another vendor to complete the computer system upgrade. Accordingly, Sweetser has alleged all of the elements necessary to support a breach of contract claim and established

that the Court has subject matter jurisdiction over that claim.

■■■ With respect to breach of warranties, Courts have found that a plaintiff must make a showing of the following four elements to state a breach-of-warranty claim under New York law: "(1) plaintiff and defendant entered into a contract; (2) containing an express warranty by the defendant with respect to a material fact; (3) which warranty was part of the basis of the bargain; and (4) the express warranty was breached by defendant." *Promuto v. Waste Mgmt., Inc.,* 44 F.Supp.2d 628, 642 (S.D.N.Y.1999). Here again, the Complaint provides, and the parties agree, that Sweetser and Netsmart entered into an agreement whereby Netsmart was to provide computer·hardware and software systems to Sweetser. Sweetser alleges that Netsmart expressly warranted that the software and hardware would "substantially conform in all material respects with their specifications" and that Netsmart would "correct any problems or defects" with the hardware or software. The Complaint further alleges that Sweetser believed that these warranties were part of the basis of the bargain and that Netsmart breached these express warranties. Accordingly, Sweetser has alleged all of the elements necessary to support a breach of warranty claim and established that the Court has subject matter jurisdiction over that claim.

### B.   Failure to State a Claim

■ Netsmart makes the same argument under the label of failure to state a claim as it did under ripeness. Netsmart insists that "despite alleging termination of the Agreement, Sweetser has failed its burden of alleging satisfaction of the conditions precedent to such termination." (Def.'s Motion to Dismiss at 13.) As discussed above, Sweetser has not brought a

claim under the termination provision; therefore there is no requirement that it satisfy the conditions precedent to termination. Again, however, Netsmart never explains why or cites any authority indicating that termination of a contract is a prerequisite to an action for its breach. Thus, even assuming arguendo that Netsmart is correct that "a contract may be terminated only in accordance with its terms" (Def.'s Motion at 12) (citing *General Supply and Constr. Co. v. Goelet*, 241 N.Y. 28, 148 N.E. 778 (1925)), Sweetser's claims don't requires proof that it properly terminated the Agreement, or even that it terminated the Agreement at all. Moreover, the agreement does not provide that before bringing any legal action to enforce rights under the contract, the non-breaching party must comply with the conditions precedent to termination.

The fundamental argument supporting the Motion to Dismiss—failure to receive notice of termination—becomes obscured when Netsmart states that "courts applying New York law have repeatedly dismissed breach of contract claims where plaintiff failed to allege that written notice of default was provided in accordance with contractual requirements." (Motion to Dismiss at 12.) Netsmart cites four cases that support this proposition. *See Putman High Yield Trust v. Bank of New York*, 7 A.D.3d 439, 776 N.Y.S.2d 796 (1st Dept.2004) (holding that a failure to notify bondholders of a default was not actionable because "the terms of the Indenture did not require defendant to act unless it had written notice of default" and such notice was never received.); *Environmental Safety & Control Corp. v. Board of Education*, 179 A.D.2d 1012, 580 N.Y.S.2d 595 (4th Dept.1992) (holding that a breach of contract claim was barred where the non-breaching party never gave the breaching party notice of the breach); *Carnegie Successors, Inc. v. Gross*, 166 A.D.2d 224, 560

N.Y.S.2d 436 (1st Dept.1990) (issue was notice of default or breach); *Rondout Valley Cent. Sch. Dist. v. Coneco. Corp.*, 339 F.Supp.2d 425, 439 (N.D.N.Y.2004) (granting summary judgment in favor of defendant on counterclaim for breach of contract governed by New York law "because [defendant] never received written notice that it was in default, it never had the allotted thirty days in which to cure, precluding a finding that it defaulted on the Agreement"). The contract in this case, however, does not require notice of a breach as a prerequisite to bringing an action, or receiving damages, for breach. In addition, the factual allegations, taken in the light most favorable to Plaintiff, clearly support that Netsmart was on notice of the breaches. Therefore, that case law is altogether unhelpful to Netsmart's failure to state a claim argument.

After attempting to confuse the two different types of notice, Netsmart also cites *Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 727 (2d Cir.1992), which holds that when a party invokes the contractual termination provision, it must comply with the prescribed notice and cure requirements. Once again, this case is distinguishable because Sweetser is not suing to terminate the Agreement. Therefore, termination (proper or otherwise) is not an element of, or a prerequisite to, Sweetser's claims. Accepting Sweetser's factual allegations and construing all reasonable inferences in its favor, the Court concludes that Plaintiff's Complaint states claims for breach of contract and breach of warranties.

## IV. Conclusion

Accordingly, the Court **ORDERS** that Defendant's Motion to Dismiss be, and it is hereby, **DENIED** on Sweetser's breach of contract claim (Count I) and breach of warranties claim (Count II) and **GRANT-**

**ED** without objection on Sweetser's unjust enrichment claim (Count III) and negligence claim (Count IV).